## Stanley Beauregard v. City of St. Albans, Bellows Free Academy and Martin L. Wennar

[450 A.2d 1148]

No. 431-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed September 7, 1982

626

*Susan F. Eaton* of *Langrock Sperry Parker & Stahl,* Middlebury, for Plaintiff-Appellee.

*Harold C. Sylvester* and *Michael S. Brow* of *Sylvester & Maley,* Burlington, for Defendants-Appellants.

*Farrar & Counos,* St. Albans, for Defendant-Cross Appellee City of St. Albans.

Billings, J. In this action brought pursuant to 42 U.S.C. § 1983, plaintiff claimed he was unconstitutionally denied a position on the Board of Trustees of the Bellows Free Acad-

emy (Board) because of his religious preference. The trial court ruled for the plaintiff and defendants appeal.

In 1876 Hiram Bellows by will bequeathed to the Town of St. Albans (Town) land and stock for the purpose of erecting an academy building. Subsequently he executed a codicil which provided as follows:

> To prevent the monies hereby bequeathed to the Bellows Free Academy of Fairfax and the Bellows Free Academy of St. Albans from being used to propagate the peculiar views and doctrines of any particular church, sect, religious society or denomination, I make the acceptance of these provisions a condition for taking and using said funds bequeathed by the addition of this codicil to my will, viz:

> It is my will that no bishop, priest, minister, ecclesiastic or religious teacher in any church shall be trustee of the funds bequeathed by this will to the Town of Fairfax and the Town of St. Albans, that no bishop, priest, minister, ecclesiastic or religious teacher in any church shall be a trustee of the Bellows Free Academy of Fairfax or a trustee of the Bellows Free Academy of St. Albans and while I earnestly enjoin and desire that the students of such Academies shall be instructed and taught in all the purest and highest principles of morality and virtue, and be brought up to be good men and good women, I also desire that the peculiar doctrines and articles of faith of the various religious churches shall not be taught in, but shall be wholly excluded from the instruction in such Academies.

> It is my further will that there shall be never more than one trustee among the said five trustees of the said board who shall belong to any one religious church or denomination at the same time, so that there shall never be more than one Episcopalian, one Roman Catholic, one Baptist, one Methodist, one Congregationalist, and one of any other church or denomination in the said boards of trustees at the same time. I do this with a view of preventing religious or sectional differences in the management and control of said Academy.

Upon his death the Town accepted the bequest according to its terms and built a school known as the Bellows Free Academy which school became the high school for the City of St. Albans (City) and surrounding towns. Absent acceptance of the bequest in accordance with its terms the bequest would have gone to an individual. By decree of the Franklin Court of Chancery in 1928 the terms of the will were construed and the court established an appointment process for trustees as follows:

> That at the Annual Meeting of the Town of St. Albans . . . the Selectmen of said Town, after conferring with the City Council for the City of St. Albans, and with the then Board of Trustees, and having in mind the provisions of the codicil of said will as to said Trustees, shall appoint one Trustee of the "Bellows Free Academy of St. Albans, Vermont," to serve for the term of five years; and that, at the Annual Meeting of the Town of St. Albans, on every fifth years thereafter, said Selectmen shall, in the manner above specified, appoint one such Trustee for the term of five years; and said Selectmen shall, in the manner above specified, fill any vacancy that may occur during the term of any such Trustee.

> That at the Annual Meeting of the City of St. Albans . . . the City Council of Said City, after conferring with the Selectmen of the Town of St. Albans, and the then Board of Trustees, and having in mind the provisions of the codicil of said will as to said Trustees, shall appoint four Trustees of the "Bellows Free Academy of St. Albans, Vermont," to serve respectively for the terms of one, two, three and four years when said Selectmen shall appoint a Trustee, said City Council shall, in the manner above specified appoint one Trustee to serve for the term of five years; and said City Council shall in the manner above specified, fill any vacancy that may occur during the term of any such Trustee.

In March 1979 a vacancy occurred on the Board and plaintiff submitted a letter of intent to be a candidate. Upon being interviewed for the position, plaintiff stated that he had a religious preference but declined to indicate of what persuasion. Plaintiff was subsequently elected a member of the Board of

Trustees by the City Council on a three to two vote, but the City Council did not confer with the selectmen of the Town of St. Albans as required by the 1928 court decree. Following a meeting with the Trustees of Bellows Falls Free Academy and with the mayor of the City of St. Albans at which plaintiff again refused to state his religious denomination, the mayor vetoed plaintiff's election to the Board and forwarded the following letter to the City Council:

> As Mayor of the City of St. Albans and with the powers invested in me by its Charter, after careful consideration, I hereby veto the March 12th Council appointment of Mr. Stanley Beauregard, as Trustee of Bellows Free Academy.
>
> It is my opinion that the City Council must appoint a person as Trustee to B.F.A. who will first, represent the City of St. Albans and to administer the will of Hiram Bellows as it is written.
>
> Also, I feel the Council has failed to confer with the Selectmen of the Town of St. Albans as required in the will of Hiram Bellows.

Subsequent thereto the City Council elected the defendant Wennar to the Board of Trustees.

In July of 1979 plaintiff sought declaratory and injunctive relief alleging that the veto by the mayor and the provisions of the codicil violated his rights under the United States and the Vermont Constitutions. The superior court held for the plaintiff and reinstated him to the Board of Trustees. The alleged offending provisions of the codicil were stricken by the decree pursuant to the cy pres doctrine which application was not appealed. Plaintiff's request for attorney's fees was denied.

Defendants Bellows Free Academy and Wennar appealed only the following issues: (1) whether the codicil violates the first and fourteenth amendments to the United States Constitution, (2) whether the codicil violates chapter I, article 3 of the Vermont Constitution, and (3) whether the City's failure to confer with the Town was a constitutionally independent and legitimate ground for the mayor's veto. Plaintiff filed a cross-appeal on the denial of attorney's fees. The City of St.

Albans appeared only on the cross-appeal. The State of Vermont appeared below but did not appeal.

On appeal no one has challenged the trial court's finding that there is state action here, or the finding that the position of trustee is a public office in the nature of a member of a local school board. In this context, there is no question that the codicil violates the free exercise clause of the first amendment as applied to the states through the fourteenth amendment.

In *Torcaso* v. *Watkins*, 367 U.S. 488 (1961), an applicant for public office was required by the Maryland Constitution to declare a belief in God as a requisite to holding such office. The Supreme Court declared the requirement unconstitutional holding that, whether or not there is a right to hold public office, a person cannot be barred from holding office by criteria forbidden by the constitution. *Id.* at 495–96.

In *Sherbert* v. *Verner*, 374 U.S. 398 (1963), a Seventh-Day Adventist was denied unemployment benefits because her religious beliefs prohibited her from working on Saturday. In holding the denial of benefits unconstitutional the Supreme Court stated:

> The door of the Free Exercise Clause stands tightly closed against any governmental regulation of religious *beliefs* as such, *Cantwell* v. *Connecticut*, 310 U.S. 296, 303. Government may neither compel affirmation of a repugnant belief, *Torcaso* v. *Watkins*, 367 U.S. 488; nor penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities, *Fowler* v. *Rhode Island*, 345 U.S. 67 . . . .

*Id.* at 402.

In *McDaniel* v. *Paty*, 435 U.S. 618 (1978), a Tennessee statute provided that ministers could not serve as delegates to state constitutional conventions. The decision holding the provision unconstitutional was unanimous. The Court, however, split as to the correct basis for this finding. The fact that the provision applied solely to "Minister[s] of the Gospel, or Priest[s] of any denomination" gave the Court some difficulty and accounted for the split, but need not concern us here. As Chief Justice Burger stated in delivering the plurality opinion for the Court:

If the Tennessee disqualification provision were viewed as depriving the clergy of a civil right solely because of their religious beliefs, our inquiry would be at an end. The Free Exercise Clause categorically prohibits government from regulating, prohibiting, or rewarding religious beliefs as such.

*Id.* at 626. Justice Brennan, in a concurrence, stated that:

The opinion of the Tennessee Supreme Court makes clear that the statute requires appellant's disqualification solely because he is a minister of a religious faith. If appellant were to renounce his ministry, presumably he could regain eligibility for elective office, but if he does not, he must forgo an opportunity for political participation he otherwise would enjoy. *Sherbert* and *Torcaso* compel the conclusion that because the challenged provision requires appellant to purchase his right to engage in the ministry by sacrificing his candidacy it impairs the free exercise of his religion.

*Id.* at 634.

The present case presents us with the identical problem. If the plaintiff were to renounce his religion or adopt a religion not already practiced by one of the present trustees he would qualify for appointment. As the foregoing cases amply demonstrate, the state cannot require a person to make such a choice.

█ The fact that the codicil's purpose is to maintain a separation of church and state and thus advance the values of the establishment clause does not save it. Those values are more than adequately protected by the United States and Vermont Constitutions. Therefore, such a purpose provides no justification for the present infringement of the plaintiff's first amendment rights. See *Sherbert* v. *Verner, supra,* 374 U.S. at 406–09.

The plaintiff in this case has specifically invoked the protections of the Vermont Constitution. Thus, we address this issue as well out of concern for "[o]ur duty to enforce the fundamental law of Vermont, our role in the federalist system, and our obligation to the parties . . . ." *State* v. *Badger,* 141 Vt.

430, 449, 450 A.2d 336, 347 (1982) ; see *id.* at 447–49, 450 A.2d at 346–47.

Deciding the constitutionality of the codicil under the Vermont Constitution is a simple task. Chapter I, article 3, clearly forbids such state action:

> That all men have a natural and unalienable right, to worship Almighty God, according to the dictates of their own consciences and understandings, as in their opinion shall be regulated by the word of God; and that no man ought to, or of right can be compelled to attend any religious worship, or erect or support any place of worship, or maintain any minister, contrary to the dictates of his conscience, nor can any man be justly deprived or abridged of any civil right as a citizen, on account of his religious sentiments, or peculia[r] mode of religious worship; and that no authority can, or ought to be vested in, or assumed by, any power whatever, that shall in any case interfere with, or in any manner control the rights of conscience, in the free exercise of religious worship. Nevertheless, every sect or denomination of christians ought to observe the sabbath or Lord's day, and keep up some sort of religious worship, which to them shall seem most agreeable to the revealed will of God.

Vt. Const., ch. I, art. 3.

■ There is no question that the codicil's religious requirement "interfere[s] with . . . the rights of conscience, in the free exercise of religious worship," *id.*, and is therefore unconstitutional. All that is required is a mere interference. In the present case the infringement is substantial; the plaintiff must either abandon his faith or convert in order to participate in the administration of his local school board.

As to the third issue, the defendants argue that the United States and Vermont Constitutions are irrelevant to a determination of this case because the failure of the City and Town to confer on the appointment made it void as a matter of law.

■ We disagree. In our opinion the failure to confer made the appointment at most voidable, but certainly not void. The purpose of the conference requirement was to provide

the Town with an opportunity to participate in the selection process. Therefore, the failure of the City to confer with the Town can only be objected to by the Town for whose protection the conference is required. If the Town objects in a timely fashion the appointment may become invalid. Here, as there is no demonstration that the Town objected, the failure to confer with the Town was not an impediment to the validity of the appointment. Indeed, the trial court specifically found that such a failure had occurred on previous occasions with no resulting veto, and with the appointees functioning in their offices. The defendants' theory would make all of the Board's past actions by these "void" appointees invalid and subject to collateral attack, because their appointments would be as flawed as the plaintiff's. Moreover, the failure to confer is purely a procedural defect; it does not go to the heart of the City's authority to appoint. Had a conference taken place, the Town would have had no authority to veto a City appointment. The defendant's argument on this point must consequently be dismissed; it is legally unsound, and poses the potential for grave consequences to the welfare of the Academy.

In light of our holding that the failure to confer did not make the appointment void but only voidable, the trial court correctly decided that the City's failure to confer was not an independent and legitimate reason for the veto. The burden of proof is initially on the plaintiff to show that his religious beliefs were constitutionally protected and that such beliefs were a substantial and motivating factor in the decision to veto his appointment. *Mt. Healthy City School District Board of Education* v. *Doyle*, 429 U.S. 274, 287 (1977). Once this burden is met the defendants must then show by a preponderance of the evidence that the same result would have been reached regardless of the plaintiff's religious beliefs. This the defendants failed to do.

The trial court made the following unchallenged findings in support of the plaintiff: (1) the religious restriction played a substantial role and was the motivating force behind the mayor's veto of plaintiff's appointment and the lack of consultation with the Town was only incidental; (2) the plain-

tiff had a religion and his religion made him ineligible to be a trustee under the religious qualification provision of the codicil; (3) all the respective candidates were asked their religious affiliations by the Board of Aldermen; (4) when interviewed by the mayor each candidate's religious qualifications were discussed; (5) the headmaster of Bellows Free Academy subsequently wrote the mayor asking what religious denomination the plaintiff represented; and (6) one of the Board of Aldermen withdrew her support for the plaintiff because of his religious disqualification. The only evidence offered by the defendants to meet their burden was the mayor's ambiguous letter previously quoted. Thus the trial court was correct in finding that the defendants had not met their burden of proof.

■■ Plaintiff in his cross-appeal claims that attorney's fees should have been awarded pursuant to 42 U.S.C. § 1988. The question on appeal is whether the trial court abused its discretion. The rule is that a plaintiff in a civil rights suit should ordinarily recover attorney's fees unless special circumstances render such an award unjust. *Henderson* v. *Fort Worth Independent School District*, 574 F.2d 1210, 1212 (5th Cir. 1978). The trial court specifically found that the award of attorney's fees would be unjust. It found that the actions of the defendants were motivated by obedience to the 1928 court order and contained no invidious discrimination or maliciousness. *Id.* at 1213. Therefore, the trial court's denial of attorney's fees was well within its discretion and was without error.

*Affirmed.*

Chief Justice Barney sat but did not participate in the decision.