# Norman Williams and Susan Levine v. State of Vermont and William H. Conway, Jr., Vermont Commissioner of Motor Vehicles

# Valerie M. Quinn and James Woodard v. State of Vermont and William H. Conway, Jr., Vermont Commissioner of Motor Vehicles

[589 A.2d 840]

Nos. 88-309 and 89-042

Present: Allen, C.J., Gibson, J., and Wolchik, D.J., Katz, Supr. J., and Fisher, D.J., Specially Assigned

Opinion Filed November 9, 1990

Motion for Reargument Denied February 1, 1991

*O'Neill and Crawford* and *Norman Williams,* pro se, Burlington, for Plaintiffs-Appellants Williams and Levine.

*Mary P. Kehoe* of *Gear and Davis, Inc.,* Burlington, for Plaintiff-Appellant Woodard.

*Jeffrey L. Amestoy,* Attorney General, and *Thomas R. Viall* and *Andrew M. Eschen,* Assistant Attorneys General, Montpelier, for Defendants-Appellees.

**Katz, Supr. J.,** Specially Assigned. Plaintiffs filed suit in Washington Superior Court to secure refunds of taxes paid to the Department of Motor Vehicles upon first registering automobiles in Vermont. The superior court dismissed plaintiffs' claims. We affirm.

## I. Record

In 1980, Norman Williams purchased and registered a Volkswagen Dasher in Illinois, his state of residency at the time, and paid the five percent Illinois sales tax. In 1981, he moved to Vermont with his car. When he subsequently applied to register the vehicle with the Vermont Department of Motor Vehicles, he was required to pay Vermont's four percent use tax pursuant to 32 V.S.A. § 8903(b). Believing the tax was unconstitutional, as it did not apply to *Vermont* residents who purchased and paid a sales tax on vehicles in reciprocating states (including Illinois),

see § 8911(9),[1] Williams brought suit in federal court under 42 U.S.C. § 1983 to enjoin enforcement. That suit was dismissed on the authority of the Tax Injunction Act, 28 U.S.C. § 1341. Williams then paid the tax and initiated an administrative proceeding, pursuant to 32 V.S.A. § 8914, for a refund. The Motor Vehicles Department felt constrained to assume the constitutionality of the tax scheme and denied relief.

Williams then filed the present action in superior court, serving the State and Commissioner Conway, pursuant to V.R.C.P. 4(d)(2), by serving the Attorney General. Susan Levine joined the action in an amended complaint. Levine, like Williams, had moved to Vermont from another state, bringing her car with her. She had purchased a Chrysler Horizon in New York and paid the seven percent New York sales tax. When she registered the car in Vermont, she was required to pay the state use tax.

In their complaint, Williams and Levine requested refunds of the respective use taxes as well as a declaratory judgment that the tax scheme violates several provisions of the United States Constitution: article I, section 8, clause 3 (Commerce Clause); article IV, section 2 (Privileges and Immunities); and the Fourteenth Amendment (Equal Protection and Privileges and Immunities Clauses). Although now in state court, the complaint rests on the federal cause of action provided by 42 U.S.C. § 1983.

The State filed a motion to dismiss, asserting the constitutionality of the statute. The motion was granted and Williams and Levine appealed to this Court, which affirmed on the strength of our opinion in *Leverson v. Conway*, 144 Vt. 523, 481 A.2d 1029 (1984). The United States Supreme Court then granted certiorari, reversed our decision, declared the statute invalid under the Equal Protection Clause of the Fourteenth

---

[1] Section 8911(9) provides:

The tax imposed by this chapter shall not apply to:

. . . .

(9) pleasure cars acquired outside the state by a resident of Vermont on which a state sales or use tax has been paid by the person applying for a registration in Vermont, providing that the state or province collecting such tax would grant the same pro-rata credit for Vermont tax paid under similar circumstances. If the tax paid in another state is less than the Vermont tax the tax due shall be the difference;

Amendment, as it purported to afford unequal treatment to state residents and nonresidents without sufficient justification, and remanded for further proceedings. *Williams v. Vermont*, 472 U.S. 14 (1985). We, in course, remanded to the superior court. There, the State filed an answer raising, among other defenses, sovereign immunity.

In 1985, while a Vermont resident, James Woodard purchased and registered a vehicle in Florida, paying that state's seven percent sales tax. Upon transferring the registration to Vermont, he was told he had to pay Vermont's use tax. He brought suit in superior court[2] seeking a refund and a declaration that the Department of Motor Vehicles' practice[3] of not affording a tax credit to Vermont residents in his situation—that is, having registered a vehicle out of state prior to returning to Vermont—is both contrary to the statutory scheme and in violation of several provisions of the Vermont Constitution as well as the Fourteenth Amendment to the United States Constitution.

None of the plaintiffs specify any relief against Conway personally. Nor are any allegations made to suggest any conduct on his part, other than that of the Department generally, of which he was commissioner.

Although nominally consolidated below, the superior court issued separate decisions dismissing the respective complaints. As to the Williams/Levine request for declaratory relief, the court held that the equal protection issues were moot, in light of the Department of Motor Vehicles' 1986 regulation denying the tax credit of § 8911(9) to Vermonters who purchase and *register* cars out of state. Upholding the regulation as consistent with the meaning and intent of the statute, the court reasoned: "Because section 8911(9) [as clarified by the regulation] now explicitly provides no special treatment for residents, it is facially

---

[2] Valerie Quinn joined Woodard's complaint, but she did not join this appeal.

[3] Subsequently, the Department formalized this practice by adopting a rule. See Agency of Transportation, Department of Motor Vehicles, Rule 86-28-E ("Motor Vehicle Purchase and Use Tax") (July 5, 1986). The rule states that the credit provided in 32 V.S.A. § 8911(9) shall be available to Vermont residents only if the registrant "has not previously registered that vehicle in the state where it was acquired or in any other state." *Id.* at (1)(d). In materials filed with the proposed rule, the Department maintained that the "rule reflects the existing practice of the Department." Cover Sheet for Proposed Rule, Motor Vehicle Purchase and Use Tax (July 2, 1985).

constitutional and would survive the equal protection scrutiny used by the *Williams* court. Therefore, the plaintiffs no longer can request declaratory judgment . . . because the equal protection issues concerning what section 8911(9) means and how the exemption must be applied are now moot." As to their claim for a tax refund, the court held that recovery was barred by sovereign immunity, relying on *American Trucking Ass'ns v. Conway*, 146 Vt. 579, 508 A.2d 408 (1986), *cert. denied*, 483 U.S. 1019–20 (1987). As to the Woodard/Quinn complaint, the superior court reached the merits, upheld the Department's regulation against plaintiffs' several challenges, and granted the State's motion to dismiss.

Appeals were taken from both rulings. We affirm, but for reasons differing in several respects from those espoused by the superior court.

## II. Claim for Refund

### A. 42 U.S.C. § 1983

Both complaints are explicitly and solely founded on 42 U.S.C. § 1983, the Reconstruction Era civil rights statute which provides a private remedy for those alleging abridgment of federal rights by "persons" acting "under color of" state law. Although § 1983 was clearly intended to provide a federal forum for those seeking vindication of federal rights, there is no bar to the statute's use in state courts. *Maine v. Thiboutot*, 448 U.S. 1, 11 (1980); *Beauregard v. City of St. Albans*, 141 Vt. 624, 626, 450 A.2d 1148, 1149 (1982).

However, § 1983 may not be used to make a claim for relief against a state, as states are not "persons" within the meaning of the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 2308 (1989). Manifestly and explicitly, the State of Vermont is the defendant in these cases. The purpose for each of these plaintiffs having commenced suit was and remains the refund of all or part of the Vermont use tax paid on their respective autos. The actions seek retrospective relief that can come only from the State treasury. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest . . . even though individual officials are nominal defendants." *Ford Motor Co. v.*

*Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945). Under *Will*, § 1983 is not available for such relief.

■ At oral argument and in a supplementary brief, Mr. Williams suggested that footnote 10 of *Will*, 491 U.S. at 71, 109 S. Ct. at 2311–12, supports his position, and exempts the present cases from the clear and general rule laid down by *Will*. We fail to see how. In pertinent part, footnote 10 states:

> Of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for *prospective relief* are not treated as actions against the State." This distinction is "commonplace in sovereign immunity doctrine," and would not have been foreign to the 19th-century Congress that enacted § 1983.

*Id.* at 71 n.10, 109 S. Ct. at 2311–12 n.10 (citations omitted; emphasis supplied). The actions presently before this Court are not for prospective relief. Rather, these are actions to recover money already spent.[4] As Justice Stevens notes in dissent, the holding of *Will*, and in particular, footnote 10, is that while a state or its agent sued in an official capacity may be sued under § 1983 for injunctive relief, they may not be so sued for monetary relief. *Id.* at 91, 109 S. Ct. at 2323.[5] Absent waiver, the

---

[4] In an effort to style the relief requested as prospective, Mr. Williams also urges that he should be permitted to receive a credit against future taxes for any sums held wrongfully. Such a remedy is without support in law. If he were correct, such a "credit" would constitute nothing less than a total end run around the sovereign immunity doctrine. A state's immunity would be so tractable as to be useless.

[5] Footnote 10 of *Will* cites *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738 (1824), and *United States v. Lee*, 106 U.S. 196 (1882), among others, as cases presumably on the side of prospective relief; plaintiffs assert that the reference to these cases supports their position. *Osborn* does require certain state officials to return a tax wrongfully levied against the Bank, but the officials were already under an injunction not to take the funds. *Osborn* merely upholds a federal court's power to enforce an injunction ordering state officials not to violate federal law. In the present case, plaintiffs never obtained an injunction before paying the tax. In *Lee*, the Court ordered a return of wrongfully taken real property, and the case, in any event, was a suit against *federal* officers.

Eleventh Amendment[6] bars a damages action against the state brought in federal court; *Will* makes clear that § 1983 does not provide an avenue for the same relief in state court. *"Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court." *Howlett v. Rose,* — U.S. —, —, 110 S. Ct. 2430, 2437 (1990); see also *Edelman v. Jordan,* 415 U.S. 651, 663, 678 (1974) (action to recover wrongfully withheld welfare payments from state funds barred as action against state); *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. at 462–63 (action seeking refund of taxes collected by state in violation of federal law barred as action against state); Note, *Clarifying Comity: State Court Jurisdiction and Section 1983 State Tax Challenges,* 103 Harv. L. Rev. 1888, 1896 (1990) (discussing import of *Will* on state tax litigation).

■■ Accordingly, we reject plaintiffs' claims for monetary relief against the State or Commissioner Conway under § 1983.[7]

---

[6] The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the text does not address suits against a state by its own citizens, the Supreme Court has long held that the Amendment's bar encompasses such suits. *Hans v. Louisiana,* 134 U.S. 1 (1890). By its terms, the Amendment restrains only the federal courts; "[n]o Eleventh Amendment question is present . . . where an action is brought in a state court . . . ." *Maine v. Thiboutot,* 448 U.S. 1, 9 n.7 (1980).

[7] Plaintiffs also argue on appeal that their causes of action proceed directly from the Fourteenth Amendment of the United States Constitution. See *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 389 (1971) (private damage action against federal officials implied from Fourth Amendment). We do not believe a *Bivens*-type action may be brought directly under the Fourteenth Amendment in light of Congress' express provision in 42 U.S.C. § 1983 for a damage remedy against state officials who have violated federal law. The Court in *Bivens* created a remedy against *federal* officials, who are not subject to liability in § 1983 actions. "Indeed, one of the reasons the Court in *Bivens* held that individuals whose Fourth Amendment rights were violated by federal officials had an implied cause of action for damages directly under the Constitution was that no other remedy was available." *Tarpley v. Greene,* 684 F.2d 1, 10 (D.C. Cir. 1982); see Zagrans, *"Under Color of" What Law: A Reconstructed Model of Section 1983 Liability,* 71 Va. L.

Assuming the complaints also rest on state causes of action (although they are designated solely as § 1983 actions), we next consider the State's defense of sovereign immunity.

## B. Sovereign Immunity

### 1. *Scope of Remand*

After remand from the United States Supreme Court and this Court, the State raised for the first time the defense of sovereign immunity. Initially, plaintiffs object to this defense on

---

Rev. 499, 591 n.472 (1985); Blackmun, *Section 1983 and Federal Protection of Individual Rights—Will the Statute Remain Alive or Fade Away?*, 60 N.Y.U. L. Rev. 1, 22 (1985) ("in *Bivens*, the Court put together a working equivalent of § 1983 for constitutional claims against federal officials"); cf. *Bush v. Lucas*, 462 U.S. 367, 380-90 (1983) (no damages remedy implied directly from Constitution where Congress has provided statutory remedies).

Plaintiffs rely on several early cases seeking refunds of state or local taxes claimed to be unconstitutional. *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239 (1931); *Carpenter v. Shaw*, 280 U.S. 363 (1930); *Ward v. Love County*, 253 U.S. 17 (1920); *Gaar, Scott & Co. v. Shannon*, 223 U.S. 468 (1912); *Atchison, Topeka & Santa Fe Ry. v. O'Connor*, 223 U.S. 280 (1912). But none of these cases expressly provide a right of action directly under the Constitution. Indeed, four of them were initiated in state court and presumably were founded on state law causes of action. Only *Atchison* began in federal court, but the opinion does not specify on what basis federal jurisdiction was grounded. In any event, all these cases long predate the development of modern § 1983 law, beginning with *Monroe v. Pape*, 365 U.S. 167 (1961). Finally, none of the cases cited by plaintiffs, except *Atchison*, address the question raised in this case, namely, whether an action seeking a refund of unconstitutionally levied taxes survives a state's assertion of sovereign immunity; and *Atchison* discusses sovereign immunity only obliquely: "If he [the defendant Secretary of State] had no right, as he had not, to collect the money, his doing so in the name of the State cannot protect him." 223 U.S. at 287. *Atchison* previews the Court's recent decision in *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, — U.S. —, —, 110 S. Ct. 2238, 2247 (1990), that due process requires that states provide a meaningful remedy for taxpayers challenging the constitutionality of their tax obligations. *Atchison* does not, however, say that a taxpayer may overcome sovereign immunity in a suit brought directly under the Fourteenth Amendment. Recent Eleventh Amendment decisions demonstrate the Supreme Court's unwillingness to override sovereign immunity absent a clear statement by *Congress* to that effect. See, e.g., *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243 (1985). Federal sovereign immunity was not an issue in *Bivens* and its progeny because those cases involved suits not against the sovereign but against federal officials in their personal capacities. See *Carlson v. Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979).

the ground that the Supreme Court remanded for the sole purpose of directing a refund. For several reasons, we reject this attempt to limit or avoid issues raised below.

The State first responded to the complaint by filing a motion to dismiss, asserting the constitutionality of its taxation scheme. That motion was granted by the superior court. As a matter of pleading, therefore, the State was not at that time required to file an answer or affirmative defenses—which were due only ten days after the motion was denied. V.R.C.P. 12(a). The United States Supreme Court ultimately denied the State's motion, and, until remand, no obligation to plead an affirmative defense existed. Unless somehow barred by the United States Supreme Court's mandate, the State's answer and affirmative defenses, filed September 12, 1985, were timely.[8] See *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 515 n.19 (1982) (sovereign immunity defense may be raised on remand after appeal from lower court's dismissal of action on the pleadings). Therefore, plaintiffs' reliance on cases barring new issues after remand, when those cases had already been tried prior to appeal, is unavailing. The Supreme Court explicitly recognized that a full record had not been developed but that the "action was dismissed for failure to state a claim before an answer was filed." *Williams v. Vermont*, 472 U.S. at 28.

Plaintiffs suggest that their case was remanded from the Supreme Court "with specific instructions." To the contrary,

in light of the fact that the action was dismissed on the pleadings, and given the possible relevance of state law, we express no opinion as to the appropriate remedy.

We hold only that, when the statute is viewed on its face, appellants have stated a claim of unconstitutional discrimination. The decision below is accordingly reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

472 U.S. at 28 (citation omitted). It is clear that nothing more than the granting of the motion to dismiss was reversed; nothing else was decided. If further support were needed, it is supplied by the recent decision noting that "after invalidating a

---

[8] On September 9, 1985, this Court remanded the matter to Washington Superior Court.

state tax scheme on Commerce Clause grounds, [the Supreme Court has] left state courts with the initial duty upon remand of crafting appropriate relief in accord with both federal and state law." *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* — U.S. —, — n.16, 110 S. Ct. 2238, 2248 n.16 (1990) (citing *Williams v. Vermont* as an example); accord *American Trucking Ass'ns v. Smith,* — U.S. —, —, 110 S. Ct. 2323, 2330 (1990).

■ The Supreme Court, by its mandate, made no decision regarding affirmative defenses or remedial issues which might arise under state or federal law, or which might affect one or another remedy. The State was not precluded from raising a defense such as sovereign immunity.

2. *Due Process Requirement of Remedy for Constitutional Violation*

Plaintiffs argue that the Fourteenth Amendment prohibition against deprivation of property without due process of law[9] requires that they be afforded a remedy to secure return of improperly exacted taxes. They are correct.

> To satisfy the requirements of the Due Process Clause . . . in this refund action the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a "clear and certain remedy" for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one.

*McKesson Corp. v. Division of Alcoholic Beverages,* — U.S. at —, 110 S. Ct. at 2251 (citation and footnote omitted). "[A] ruling that a tax is unconstitutionally discriminatory under the Commerce Clause places substantial obligations on the States to provide relief . . . ." *American Trucking Ass'ns v. Smith,* — U.S. at —, 110 S. Ct. at 2333.

■ Vermont must afford a remedy and a meaningful remedy, but not any particular remedy. "[S]ome form of hearing is required before an individual is finally deprived of a property

---

[9] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), *quoted in McKesson Corp.*, — U.S. at — n.17, 110 S. Ct. at 2250 n.17. But that remedy is not, as a matter of constitutional necessity, a plenary suit in the court of general jurisdiction.

Our Legislature has provided a specific administrative procedure to afford plaintiffs the remedy to which they are constitutionally entitled. 32 V.S.A. § 8914 states:

> Any overpayment of [the motor vehicle purchase and use] tax as determined by the commissioner shall be refunded.

Plaintiffs concede that § 8914 covers unconstitutional taxes as well as arithmetic errors: "The statute makes no distinction between overpayments due to unconstitutionality or other causes." Brief for Appellants Williams and Levine at 19; Brief for Appellant Woodard at 27. See also *United States v. Dalm*, 494 U.S. 596, 609 n.6, 110 S. Ct. 1361, 1368–69 n.6 (1990) ("The common sense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all. . . . The word ['overpayment'] encompasses 'erroneously,' 'illegally,' or 'wrongfully' collected taxes . . . .").

▮ Prior to the United States Supreme Court's decision, the remedy provided by § 8914 was not available to Williams and Levine to the extent they challenged the facial validity of § 8903, because the Commissioner of Motor Vehicles is not authorized to rule upon the constitutionality of the *statutes* he is bound to administer. See *Westover v. Village of Barton Elec. Dep't*, 149 Vt. 356, 357, 543 A.2d 698, 699 (1988). Nevertheless, after the Supreme Court's ruling that the use tax statute is facially unconstitutional, a complaint to the Commissioner under § 8914 would not have been futile.[10] The Commissioner at that point would not have been required to address the constitutionality of the statute, for that question had been decided; he would have been faced instead with three potential questions:

---

[10] Neither § 8914 nor any other provisions of chapter 219 of Title 32 ("Motor Vehicle Purchase and Use Tax") specify a limitations period for actions before the Commissioner pursuant to § 8914. Cf. 12 V.S.A. § 517 (one-year limitation period on actions in court to recover taxes paid under protest). We do not here decide what, if any, statute of limitations is generally applicable to such actions.

Did the Department in fact *administer* the use tax statute in a manner that discriminated against nonresidents? If not, did the Department's enforcement of the tax, eventually pursuant to Rule 86-28-E, comply with the statute? If it did comply with the statute, did the practice violate the Commerce or Privileges and Immunities Clauses?[11] Plaintiff Woodard also challenged the Department's practice on statutory grounds, and raised additional constitutional challenges to the use tax *as administered* in the case of Vermont residents who registered their cars out of state before bringing them to Vermont. The Commissioner had jurisdiction to decide all of these claims. See *Alexander v. Town of Barton*, 152 Vt. 148, 151, 565 A.2d 1294, 1296 (1989) (while administrative agencies cannot rule on the constitutionality of legislation, they can adjudicate constitutional questions in determining validity of statutorily-delegated agency practices); *Christian Brothers Institute of New Jersey v. Northern New Jersey Interscholastic League*, 86 N.J. 409, 416, 432 A.2d 26, 29 (1981) (administrative agency may rule on constitutional issues relevant and necessary for resolution of questions within scope of its jurisdiction); 4 K. Davis, Administrative Law Treatise § 26:15, at 480 (2d ed. 1983) (exhaustion of administrative remedies "may be required when a factual context is needed for deciding the constitutional question or when the objecting party may prevail on nonconstitutional grounds"). The first question posed by Williams and Levine, in particular, was suited to agency determination. See *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) ("Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."). All plaintiffs in this case, therefore, had an available remedy in § 8914 but chose not to pursue it.

One further point must be addressed. In *American Trucking Ass'ns v. Conway*, 146 Vt. 579, 508 A.2d 408 (1986), this Court

---

[11] The United States Supreme Court declared the tax scheme facially invalid under the Equal Protection Clause; Williams and Levine continue to argue that the statute, even as interpreted and administered by the Department, violates the Privileges and Immunities and Commerce Clauses.

considered a constitutional challenge to statutes imposing certain fees on foreign-registered trucks. While ruling that the statutes at issue violated the Commerce Clause of the United States Constitution, we upheld the superior court's refusal to order a refund of fees collected pursuant to the objectionable statutes. "This action for a tax refund is a suit against the state, and therefore, is barred by sovereign immunity unless the state has waived its immunity." *Id.* at 587–88, 508 A.2d at 414. We found that 23 V.S.A. § 3020(b), authorizing the Commissioner to refund a tax or fee that "has been illegally or erroneously collected or computed," did not constitute a waiver of sovereign immunity. The statute, we wrote, "merely provides for a refund mechanism if errors are made in determining what tax is imposed. . . . Here, the Vermont legislature has not inferentially indicated its intent to provide the amounts paid to the state under a statute later declared invalid." *Id.* at 588, 508 A.2d at 414.

■ We recognize that our construction of 23 V.S.A. § 3020(b) in *American Trucking Ass'ns* is incompatible with the meaning we have ascribed to 32 V.S.A. § 8914 in this opinion. The term "overpayment" in § 8914, if anything, implies a narrower authority to award refunds than the term "illegally or erroneously collected" in § 3020(b); yet, as we have explained, § 8914 does provide a remedy to recover "amounts paid to the state under a statute later declared invalid." The Court's confined reading of § 3020(b) was grounded in an understanding of common-law sovereign immunity that is no longer tenable after the Supreme Court's recent unanimous decisions in *McKesson Corporation* and *Howlett v. Rose.* Thus, in *American Trucking Ass'ns*, we said that "the state cannot be sued without its consent for injuries resulting from the exercise of functions essentially governmental in character." 146 Vt. at 587, 508 A.2d at 413. But due process may require that states entertain suits against them though they have not consented. That is the holding of *McKesson*: "[I]f a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." — U.S. at —, 110

S. Ct. at 2247 (footnotes omitted). *Howlett* specifically holds that the Supremacy Clause does not permit a state law defense of sovereign immunity in a § 1983 action brought in state court where a sovereign immunity defense would not be available had the action been brought in a federal forum. — U.S. at —, 110 S. Ct. at 2242–43. "[A]s to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common law heritage." *Id.* at —, 110 S. Ct. at 2247. The import of these decisions cannot be avoided. Section III of the Court's opinion in *American Trucking Ass'ns* should be considered overruled.

■ . Common-law sovereign immunity, however, is not vitiated entirely. A state must provide some remedy to permit the recoupment of unconstitutionally exacted taxes, but it may choose, and limit, the remedy, so long as it comports with due process principles. *McKesson* notes that "States may avail themselves of a variety of procedural protections against any disruptive effects of a tax scheme's invalidation, such as providing by statute that refunds will be available to only those taxpayers paying under protest, or enforcing relatively short statutes of limitation applicable to refund actions." — U.S. at —, 110 S. Ct. at 2257. The Court added that "[s]uch procedural measures would sufficiently protect States' fiscal security when weighed against their obligation to provide meaningful relief for their unconstitutional taxation." *Id.* Vermont has consented to suit for the recovery of wrongfully levied purchase and use taxes by providing in 32 V.S.A. § 8914 for administrative complaint to the Commissioner of Motor Vehicles. Because that remedy provides taxpayers with due process—indeed, plaintiffs have not challenged the sufficiency of the remedy—the defense of sovereign immunity in a court of plenary jurisdiction remains intact and available to the State.

■ The superior court could not award a refund of taxes absent the State's waiver of immunity, and, therefore, properly dismissed plaintiffs' claims for monetary relief.

## III. Declaratory Relief

Following the Supreme Court's ruling that the statute contravened the Equal Protection Clause, *Williams v. Vermont,*

472 U.S. at 28, the State argued on remand that the Department had not in fact administered the tax in a discriminatory manner, and, to clarify its position, had promulgated Rule 86-28-E. See note 3, *supra*. The superior court agreed, holding that the new rule eliminated the discriminatory treatment of nonresidents and thereby rendered the request for declaratory judgment moot. On appeal, Williams and Levine contend that the statute, even as interpreted and administered by the Department, continues to violate the Privileges and Immunities and Commerce Clauses. They also argue, in an effort to avoid the conclusion that the new rule has rendered their equal protection challenge moot, that the rule contradicts legislative intent and the plain meaning of 32 V.S.A. § 8911(9).

In his complaint and on appeal, Woodard also requests a declaratory ruling that the Department's enforcement of its tax scheme violates the governing statute. Woodard further raises state and federal constitutional challenges to the scheme as administered. In Woodard's case, the superior court also dismissed the complaint, but reached the merits of his claims, essentially granting declaratory relief to the State.

All three plaintiffs' requests for declaratory rulings on federal constitutional issues assertedly arise under 42 U.S.C. § 1983. Of course, plaintiffs' claims that are grounded on a violation of a state statute or the Vermont Constitution are not properly brought under 42 U.S.C. § 1983 because that statute remedies the deprivation of rights secured by federal law. See *Maine v. Thiboutot*, 448 U.S. at 4. As to all claims, we find that the superior court did not have jurisdiction to award declaratory relief. The § 1983 claims, however, raise certain additional considerations, as addressed below.

■ Vermont law affords the superior court general authority to grant declaratory relief. 12 V.S.A. §§ 4711–4725. Moreover, the Administrative Procedure Act provides for declaratory judgment actions to challenge the "validity or applicability of a rule . . . if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff." 3 V.S.A. § 807. The declaratory remedy, however, does not enlarge the jurisdiction of the court. *Demag v. American Ins. Co.*, 146 Vt. 608, 610, 508 A.2d 697, 698 (1986). If the

58

Legislature has designated another tribunal to hear certain claims, the declaratory judgments statutes do not *ipso jure* vest jurisdiction over those claims in the superior court. In *Demag*, for example, the plaintiff sought a declaration that she was entitled to receive certain death benefits under the Workers' Compensation Act. We held that the superior court had no jurisdiction over this claim, "because plaintiff failed to avail herself of the administrative remedy provided by the Workers' Compensation Act." *Id.* Similarly, in *Trivento v. Commissioner of Corrections*, 135 Vt. 475, 380 A.2d 69 (1977), we considered whether the superior court had jurisdiction to issue a declaratory ruling on the constitutionality of a state prisoner's confinement. We held that it did not.

> Where the Legislature has provided that certain rights (here the right to have one's sentence modified) are enforceable in specified tribunals (here the superior court in which sentence was imposed), the declaratory judgments vehicle should not be used to frustrate that legislative choice. To do so would be to ignore the message of 12 V.S.A. § 4711 and our prior holdings that the Act has not enlarged the subject matter jurisdiction of the courts.

*Id.* at 478, 380 A.2d at 71–72; see also *In re D.A. Associates*, 150 Vt. 18, 20, 547 A.2d 1325, 1326–27 (1988) ("when an administrative remedy is established by statute or regulation, relief must not only be sought in accordance therewith, but must first be exhausted before recourse to the courts is available"). But see *Neal v. Brockway*, 136 Vt. 119, 121, 385 A.2d 1069, 1070 (1978) ("bare existence of another adequate remedy is not a bar to a declaratory judgment proceeding where a controversy exists").

■ Declaratory relief would not give plaintiffs what they want; it would only advise the ultimate decision-maker on points of law necessary to get a refund. As we have made clear, the superior court does not have jurisdiction over the refund claims in this case absent a waiver of sovereign immunity. To the extent plaintiffs seek declaratory rulings in order to obtain their refunds, the superior court likewise lacks jurisdiction to award the requested declaratory relief. As in *Trivento* and *Demag*, plaintiffs may pursue their claims in another forum; the general statutory authority vested in the superior court to

award declaratory judgments does not permit litigants to raise such claims, by their own bootstraps, where jurisdiction is otherwise lacking. The judiciary is not empowered to render advisory opinions the sole purpose of which is to aid in the resolution of a dispute that properly belongs in another tribunal. See *Lace v. University of Vermont*, 131 Vt. 170, 175, 303 A.2d 475, 478 (1973).

Plaintiffs' requests for declaratory relief could not be decided in the superior court, therefore, unless such requests are justiciable on their own account, detached from the refund claims.[12] The availability of declaratory or any other particular relief does not alter the fundamental prerequisite to judicial authority—a justiciable controversy.

> The function of a declaratory judgment is to provide a declaration of rights, status and other legal relations of parties to a justiciable controversy. Without such justiciable controversy being present, the declaratory judgment can provide no more than an advisory opinion, which our

---

[12] Even if the declaratory issues were justiciable, "the courts look with disfavor on piecemeal litigation of the matters in controversy." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2759, at 648 (2d ed. 1983) (hereinafter Wright, Miller & Kane). Thus, "federal courts have expressed a strong preference that issues of state taxation be litigated in state courts through a suit for refund rather than in federal courts through a suit for declaratory or injunctive relief." *Alcan Aluminium Ltd. v. Department of Revenue of State of Oregon*, 724 F.2d 1294, 1298 (7th Cir. 1984). The disfavor toward piecemeal litigation, however, is not generally treated as jurisdictional, but rather as a matter of discretion. See 10A Wright, Miller & Kane § 2759; cf. 12 V.S.A. § 4716 ("The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."). Similarly, "[d]eclaratory relief ordinarily should not be granted if a special statutory proceeding has been provided for the determination of particular questions." 10A Wright, Miller & Kane § 2758, at 642. This rule of abstention may be circumvented in the court's discretion. For example, in *Katzenbach v. McClung*, 379 U.S. 294, 296 (1964), which upheld the constitutionality of federal law prohibiting racial discrimination at restaurants, the Supreme Court reached for the merits although the plaintiffs had not pursued their claims as provided by statute, because interference with government action had already occurred (the district court had enjoined the government from enforcing the Civil Rights Act against the restaurant) and the constitutional issues were already before the Court in a companion case. *Id.* These considerations are not present here, and we do not decide whether the rule applied in *Demag* and *Trivento* would give way were similar considerations present.

State judiciary does not have the constitutional power to render.

*Lace v. University of Vermont*, 131 Vt. at 175, 303 A.2d at 478 (citations omitted). "It is well settled that an action for declaratory relief must be based on an actual controversy; the claimed result or consequences must be so set forth that the court can see that they are not based upon fear or anticipation but are reasonably to be expected." *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46–47 (1974); accord *Beecham v. Leahy*, 130 Vt. 164, 168, 287 A.2d 836, 838 (1972). The Administrative Procedure Act codifies these limits on the court's power over suits testing the validity of agency rules by requiring "that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff." 3 V.S.A. § 807.

 Our law conforms with the longstanding federal rule that the availability of declaratory relief turns on whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A mere abstract question or hypothetical threat is not a sufficient basis for a declaratory judgment. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Extra caution is advised in cases involving political and constitutional questions. "The power of courts, and ultimately of this Court, to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough." *United Public Workers v. Mitchell*, 330 U.S. 75, 89–90 (1947).

It is apparent in the present cases that, once severed from the refund claims, no justiciable controversy exists. Williams has now lived in Vermont close to ten years, and we may take judicial notice that he has been a member of the bar of this Court for that period. Levine has lived in the state even longer. Neither suggests a reasonable fear or anticipation of being subject again to the allegedly unconstitutional use tax—that is, of purchasing and registering a vehicle out of state, while enjoying

residency in another state, and subsequently seeking to register the car in Vermont. Similarly, Woodard is not likely again to purchase a car out of state and again fail to secure Vermont registration by mail at the outset, thereby avoiding the potential of double taxation.

The United States Supreme Court's opinion in *Golden v. Zwickler* is particularly instructive. Zwickler had distributed an unsigned political handbill, castigating a certain congressman for his stance on a foreign-aid issue. For that act, he was prosecuted under a New York statute barring anonymous election literature. His conviction was reversed on state law grounds, but the statute remained in force. Zwickler then brought suit for a declaratory judgment on the statute's validity. 394 U.S. at 104–05. Writing for a unanimous Court, Justice Brennan noted that the criticized congressman had left that office for a fourteen-year term as a state supreme court justice, and concluded: "We think that under all the circumstances of the case the fact that it was most unlikely that the Congressman would again be a candidate for Congress precluded a finding that there was 'sufficient immediacy and reality' [to justify issuance of a declaratory judgment]." *Id.* at 109 (quoting *Maryland Casualty*, 312 U.S. at 273).[13]

██ Declaratory relief is, and can be, sought in this case only to further the true goal of obtaining other relief, namely a refund. Because the superior court has no jurisdiction over the refund claim, it also has no jurisdiction to issue advisory declaratory relief.

*The superior court's declaratory judgment ruling is vacated; otherwise, its orders dismissing the two complaints are affirmed.*

---

[13] The facts in the present cases and in *Zwickler* must be distinguished from those cases where plaintiffs demonstrate a strong likelihood of a recurrence of the controversy in litigation. For example, in *Washington v. Harper*, 494 U.S. 210, 110 S. Ct. 1028 (1990), a mentally ill prisoner sought declaratory relief regarding prison procedures for forced medication. The Supreme Court there took particular note that given Harper's medical history, it remained likely that officials would seek to administer antipsychotic medications to him in the future. *Id.* at 219, 110 S. Ct. at 1035. The Court accordingly reached the merits.