2007 VT 87

# Ernest Brod and Residents Concerned About Omya v. Agency of Natural Resources

[936 A.2d 1286]

No. 06-032

Present: Dooley, Johnson, Skoglund and Burgess, JJ., and Davenport, Supr. J., Specially Assigned

Opinion Filed August 24, 2007

David K. Mears, *Environmental and Natural Resources Law Clinic*, South Royalton, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Bridget C. Asay* and *Holly A. Harris*, Assistant Attorneys General, Montpelier, for Defendant-Appellee.

¶ 1. **Burgess, J.** Plaintiffs Ernest Brod and Residents Concerned About Omya appeal a superior court order dismissing their complaint challenging the validity of a now defunct administrative rule adopted by defendant Agency of Natural Resources (ANR). Plaintiffs' complaint alleged that the rule resulted in waste from a neighboring mining operation polluting the environment. The trial court dismissed plaintiffs' action for lack of standing. We affirm.

¶ 2. Plaintiffs "must demonstrate standing for a court to have jurisdiction over a petition for declaratory relief." *Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998). Accordingly, our review of dismissal for lack of standing is the same as that for lack of subject matter jurisdiction. We review the lower court's decision de novo, accepting all factual allegations in the complaint as true. *Town of Bridgewater v. Dep't of Taxes*, 173 Vt. 509, 510, 787 A.2d 1234, 1236 (2001) (mem.).

¶ 3. Plaintiffs' complaint asserts the following relevant facts. Omya operates a quarry in Florence, Vermont that produces calcium carbonate. As part of its production process, Omya grinds marble ore and mixes it with water to produce calcium carbonate

in slurry form. It then uses various "flotation" chemicals and bleaching agents to purify or separate the calcium carbonate. The waste from this purification process, known as the tailings, is deposited into open, onsite pits and quarries called Tailings Management Areas. On several occasions, tailings from management areas have spilled. Plaintiffs live near Omya's facility and are concerned that such tailings are harmful to public health and the environment.

¶ 4. ANR is charged with administering the Solid Waste Management Act, 10 V.S.A. §§ 6601-6632 ("the Act"), and promulgating rules to implement it. *Id.* § 6603. The Act defines "solid waste" broadly to include discarded mining material and provides just two exemptions to the regulation of solid waste. *Id.* § 6602(2). ANR enacted eleven additional exemptions pursuant to its rulemaking authority. Solid Waste Management Rules ("Rules") § 6-301(b), 8 Code of Vermont Rules 12 036 003-6. One such exemption, the so-called earth materials exemption, excludes from regulation "earth materials resulting from mining . . . except where the [ANR] Secretary determines that these materials may pose a threat to public health and safety, the environment, or cause a nuisance." *Id.* § 6-301(b)(2). For a number of years, until 2003, ANR declined to regulate Omya's disposal and storage of tailings under the agency's Solid Waste Management Program, having determined that the waste fell within the regulatory exemption for earth materials. Plaintiffs' complaint alleges that the earth materials exemption exceeded ANR's statutory authority and conflicted with the Act.

¶ 5. In 2002, Omya requested the Director of ANR's Solid Waste Management Program to confirm Omya's exemption from regulation in connection with the company's application for a land use permit. In response, the Director preliminarily determined that Omya's tailings constituted earth materials and were therefore exempt from regulation. Plaintiffs requested that this decision be reconsidered, and in November 2003, the Commissioner of Environmental Conservation issued a final determination, concluding that although the tailings fit the definition of "earth materials," they were nevertheless subject to regulation because the tailings' chemical content "may pose a threat to human health and safety, the environment, or create a nuisance." Omya then asked the Secretary of ANR to review the Commissioner's determination. Plaintiffs also requested review, asking the Secretary both to

confirm that Omya's tailings were not exempt earth materials and to declare unlawful the earth materials exemption itself. The Secretary, without overturning the Commissioner's prior decision, remanded the matter to the Commissioner to give the parties an opportunity to supplement the record and to give the Commissioner the opportunity to consider any additional information. On remand, the Commissioner appointed a designee to review the final determination. While declining to consider the validity of the earth materials exemption, the designee concluded that the tailings fell outside of the exemption, because two chemicals contained in the waste posed a threat to public health and the environment. In April 2005 the Commissioner issued his decision on remand, again concluding that Omya's tailings were not exempt from regulation because of the potential threat to public health. No further review of the Commissioner's determination was sought.

¶ 6. In November 2004, prior to the Commissioner's decision on remand, plaintiffs filed this suit asking the Washington Superior Court to declare the earth materials exemption unlawful and to issue a prospective injunction prohibiting ANR from granting Omya, or any other entity, that exemption in the future. ANR responded by moving to dismiss, claiming: (1) plaintiffs lacked standing because ANR had already ruled that the exemption did not apply to Omya's tailings, and thus no case or controversy existed; and (2) the court should refuse to exercise jurisdiction because the doctrines of primary jurisdiction and exhaustion of administrative remedies prohibited it from doing so while the parties participated in an ongoing administrative proceeding. The trial court ruled that plaintiffs' alleged injury, the potential environmental impact of the earth materials exemption, was not an injury to a legally protected interest, because ANR had already determined that the exemption did not apply to Omya. The court also found that it could not redress plaintiffs' alleged injury, because any ruling that the exemption was invalid would not change "the current state of affairs" with respect to Omya. Finally, the court concluded that it could not rule on the overall validity of the exemption because plaintiffs could not demonstrate

that they would suffer any harm from its existence.[1] Deciding that plaintiffs lacked standing, the court declined to reach the issues of primary jurisdiction and exhaustion of administrative remedies.

¶ 7. Plaintiffs brought their challenge pursuant to 3 V.S.A. § 807, which provides, in relevant part:

> The validity or applicability of a rule may be determined in an action for declaratory judgment in the Washington superior court if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

While § 807 grants Washington Superior Court jurisdiction to hear challenges to a rule adverse to plaintiffs' legal rights, the statute does not eliminate the prerequisite of a justiciable controversy. *Williams v. State*, 156 Vt. 42, 59-60, 589 A.2d 840, 851 (1990). The statutory authority "to award declaratory judgments does not permit litigants to raise such claims, by their own bootstraps, where jurisdiction is otherwise lacking." *Id.* at 58-59, 589 A.2d at 850. Rather, § 807 codifies the injury-in-fact and actual-case-or-controversy requirements of standing. Consequently, plaintiffs must still demonstrate "a personal injury traceable to the defendant's conduct that the court can remedy by granting the sought-after relief." *Brigham v. State*, 2005 VT 105, ¶ 16, 179 Vt. 525, 889 A.2d 715 (mem.).

¶ 8. Vermont courts are vested with subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests. *Agency of Natural Res. v. U.S. Fire Ins. Co.*, 173 Vt. 302, 306, 796 A.2d 476, 479 (2001). To have a case or controversy subject to the jurisdiction of the court, the plaintiffs must have standing. See *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 341, 693 A.2d 1045, 1047 (1997) (recognizing that "[s]tanding doctrine is fundamentally rooted in respect for the separation of powers of the independent branches of government."). In the absence of standing, any judicial decision would be merely advisory, and Vermont courts are without constitutional

---

[1] ANR has since abolished the exemption and so now urges that the issue is moot. Because the case is resolved on grounds of standing, we need not address the question of mootness.

authority to issue advisory opinions. *Parker*, 169 Vt. at 77, 726 A.2d at 480.

¶ 9. For standing, plaintiffs must present a real — not merely theoretical — controversy involving " 'the threat of actual injury to a protected legal interest' " rather than " 'merely speculating about the impact of some generalized grievance.' " *Id.* (quoting *Town of Cavendish v. Vt. Public Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982)). To satisfy this burden, plaintiffs must "show (1) injury in fact, (2) causation, and (3) redressability." *Id.* An injury in fact is defined as an "invasion of a legally protected interest." *Hinesburg Sand & Gravel Co.*, 166 Vt. at 341, 693 A.2d at 1048 (citation omitted). In a suit for declaratory judgment, an injury in fact must be reasonably expected and not based on fear or anticipation. *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46 (1974).

¶ 10. When a suit for declaratory judgment challenges "the legality of government action or inaction," and the plaintiff's alleged injury is not a direct result of that government action, the plaintiff often has a greater burden in showing injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). This is because, unlike conduct expected to directly cause a plaintiff's injury, a plaintiff's injury arising out of allegedly unlawful regulation (or lack of regulation) of a third party is dependent upon the response of that third party to the regulation. *Id.* The plaintiff then has the burden to show that the third party's response to regulation will "produce causation and permit redressability of injury." *Id.* at 562.

¶ 11. Plaintiffs' claimed injury is that ANR's application of the earth materials exemption to Omya's operation poses a threat to their health, the general public's health, and to the environment.[2] The claimed injury lacks merit, because ANR decided not to exempt Omya from regulation. Indeed, ANR required Omya to certify compliance of the entire facility under the Act. At no point during the course of this lawsuit, including at the time of filing, did ANR apply or threaten to apply the earth materials exemption

---

[2] Plaintiffs' alleged concern about potential or possible adverse effects on groundwater from Omya's past exemption from regulation is irrelevant to the remedy sought by plaintiffs — declaratory judgment and an injunction against the future exemption of Omya's tailings — which is entirely prospective.

to Omya's tailings. As a result, plaintiffs cannot establish that the government regulation they seek to have enforced will have any effect on the third party causing the alleged harm, Omya, because the regulation sought was already applied before the suit was filed.

¶ 12. Plaintiffs' contention that the ANR Secretary might have reversed or still could change its determination does not change the analysis or the result. While the alleged injury need only be threatened to establish standing, *Town of Cavendish*, 141 Vt. at 148, 446 A.2d at 794, the threat must be real and apparent. An abstract potential for a change in regulatory course, either when the superior court action was commenced or even now, raises a purely speculative injury that cannot form a basis for declaratory relief. See *Ladd v. Valerio*, 2005 VT 81, ¶ 3, 178 Vt. 614, 883 A.2d 764 (mem.) ("[W]e have stated that the availability of declaratory relief turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance." (citation omitted)). Thus, plaintiffs' comparison of this case to *Richards v. Town of Norwich*, 169 Vt. 44, 726 A.2d 81 (1999), is unpersuasive. In *Richards*, the plaintiff challenged town approval of a neighboring property's septic system that did not conform to state or municipal standards, and we held that "the potential to create an olfactory nuisance" created by issuing a permit for the project was a sufficient threat of injury to confer standing. *Id.* at 49, 726 A.2d at 83. Here, unlike in *Richards*, Omya could not, either at the time the case was filed or now, legally proceed with the actions that will cause the alleged potential injury. That ANR relied upon the exemption to justify nonregulation of the tailings in the past is not sufficient to make the potential for future nonregulation anything more than speculative.

¶ 13. Finally, plaintiffs cannot sustain a facial challenge to the validity of the earth materials exemption absent a context in which its application adversely affects plaintiffs' interests. The exemption does not now apply to Omya. Assuming the mere existence of the regulation, it does not have an impact on plaintiffs at all. Plaintiffs must be directly affected by a government action, rule or law in order to have standing to challenge it. *Lujan*, 504 U.S. at 563. They must stand among persons actually affected by, not just concerned about, the regulation and its administration in

order to satisfy the injury-in-fact requirement. *Id.* Plaintiffs cannot establish that ANR threatens to apply the exemption to Omya, and so cannot prove their interests are imperiled by the exemption, or that they are otherwise directly affected by ANR's future enforcement or lack of enforcement of the Rules. As a result, they have no standing to challenge the validity or application of a purely theoretical regulatory exemption not actually in play.

¶ 14. The trial court was correct in determining that plaintiffs lack standing. The court did not err in dismissing plaintiffs' claim for lack of subject matter jurisdiction. We need not reach the issues of primary jurisdiction and exhaustion of administrative remedies.

*Affirmed.*