2013 VT 59

# Gilbert E. McCormack and Shelagh McCormack v. Rutland Hospital, Inc. d/b/a Rutland Regional Medical Center and Henry B. DiMuzio, Jr., M.D.

[79 A.3d 864]

No. 12-104

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 2, 2013

*John H. Bloomer, Jr.* of *McClallen & Bloomer, P.C.*, Rutland, and *Michael J. Regan* of *Duffy & Duffy*, Shelburne, for Plaintiffs-Appellants.

*Allan R. Keyes* and *John J. Zawistoski* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendants-Appellees.

¶ 1. **Burgess, J.** Plaintiffs appeal the superior court's denial of their motion for a new trial based on allegations of juror bias. The issues presented are whether (1) plaintiffs' motion for a new trial was timely, (2) the trial court erred in denying the motion under the test for juror bias set forth in *In re Nash*, 158 Vt. 458, 614 A.2d 367 (1991), and (3) the trial court erred in denying the motion under the doctrine of implied bias. We affirm.

¶ 2. The undisputed facts may be summarized as follows and additional relevant facts are stated as necessary. In April 2008, plaintiffs Gilbert McCormack and Shelagh McCormack filed a civil action against Dr. Henry R. DiMuzio, Jr. and Rutland Regional Medical Center (RRMC) under theories of medical malpractice and vicarious liability, respectively. Plaintiffs founded their claims on a purportedly negligent diagnosis of plaintiff Gilbert McCormack's appendicitis condition at the emergency department of RRMC in April 2005, claiming it led to the rupture of his appendix, emergency surgery, and numerous post-operative complications. After extensive discovery, voir dire and empaneling of the jury took place on October 11, 2011. Trial commenced on December 5, 2011, and the jury returned a verdict in favor of defendants on December 12, 2011.

¶ 3. Events transpiring at and after the October 11, 2011 jury selection are the subject of this appeal and an account of those proceedings is revealing. Following some opening remarks, the trial court explained to the panel the need to select "fair and impartial" jurors. To illustrate, the court posited several situations which would call into question a juror's partiality, such as a case

involving a juror's neighbor, a matter with which the juror was personally familiar, or a factual scenario very similar to one in the juror's own life.

¶ 4. Before either parties' counsel began questioning the jury panel, the trial court stated:

> [T]he case, in a very general way, is about medical care received at the Rutland Regional Medical Center in April of 2005.
>
> [D]o any of you know that you know something about the case or something about the parties or the attorneys or that you have some sort of prescheduled, prepaid travel or surgery or something like that during that period?

Two jurors reported conflicting school schedules and another responded "I'm familiar with the names of the attorneys but [do] not personally have knowledge of either of the attorneys, just to acknowledge that." Like twenty other prospective jurors, one Juror R remained silent.

¶ 5. Plaintiffs' counsel then questioned the panel. After inquiring about scheduling conflicts, plaintiffs' counsel stated, in relevant part:

> I'm Michael Regan, and my office is in Waitsfield, Vermont up near Sugarbush, and John Bloomer will serve as co-counsel. He's . . . from here in Rutland. [Plaintiffs] are both Rutland residents. Mr. Zawistoski and his firm, Ryan Smith & Carbine, are here in Rutland. His client is [defendant], who is an emergency room physician at Rutland Regional Medical Center.
>
> Initially is there anybody here who knows any of us or any of the parties so as to prevent you from being fair and impartial in this case?

Several jurors responded to this question by recounting relationships potentially affecting their partiality while, again, Juror R remained silent.

¶ 6. It was Juror R's silence in the face of the court's question "do any of you know that you know something about the case or something about the parties or the attorneys" and plaintiffs' counsel's question "is there anybody here who knows any of us or

any of the parties so as to prevent you from being fair and impartial in this case" that prompted plaintiffs' complaints of juror bias below and now on appeal. In the weeks after the verdict it came to plaintiffs' counsel's attention that, for several years leading up to the instant case, Juror R worked in public relations for the area's electric utility, Central Vermont Public Service Corporation (CVPS), and was publically involved in promoting community food and blood drives. Counsel also learned that RRMC and its law firm, Ryan Smith & Carbine, had been generous contributors to these charitable efforts.

¶ 7. On this basis, on January 9, 2012, plaintiffs filed a "Motion For a New Trial Based Upon Newly Discovered Evidence of Juror Misconduct." The motion asserted that it "came to light" that, as a CVPS communications representative, Juror R had a "long-term symbiotic" relationship with RRMC and Ryan Smith & Carbine. Plaintiffs pointed to two[1] fundraising efforts in which Juror R had some involvement as establishing both Juror R's actual and implied bias. Included with the motion were exhibits comprised of various website printouts, apparently the product of an internet search conducted on December 21-22, 2011, which form the record on appeal.

¶ 8. The first set of exhibits relied upon by plaintiffs consists of publicized snippets from the 2007, 2010, and 2011 CVPS "Fill the Cupboard Challenge," coordinated by or otherwise associated with Juror R. The "Fill the Cupboard Challenge" "challeng[es] businesses, schools, clubs and other organizations to organize food collections from customers, employers, students and members . . . with a goal of collecting at least 25,000 [food] items" to benefit the Community Cupboard. In a 2007 press release listing Juror R as the contact person for the collection, CVPS announced it would "donate $500 in the name of the company or group that collects

---

[1] In addition to plaintiffs' two principal arguments in this regard, plaintiffs point to various other tangential connections between RRMC, Ryan Smith & Carbine, and CVPS. Such evidence includes the fact that RRMC has a "CVPS/Leahy Community Health Education Conference Center" which hosts events; that one board member of CVPS is also a board member of Rutland Regional Health Services; and that a CVPS organizer served as director on the Rutland Regional Chamber of Commerce with a different Ryan Smith & Carbine attorney than the attorneys in this case. Despite plaintiffs' attempts to impute the relationships of other CVPS affiliates to Juror R, these facts shed little light on Juror R's honesty, knowledge, and ability — real and perceived — to be a fair and impartial juror and therefore are not addressed.

the most food during the Challenge" and that there was "no cost to a business or organization to participate." The press release also noted that "[t]he matching dollars provided by CVPS are . . . critical to the [Community] Cupboard remaining open all year. The Cupboard buys food with these funds in the summer when donations are at their lowest point." RRMC was listed as one of the first twenty-one participants in the food drive in 2007 and one of sixty-five overall donors in 2011; Ryan Smith & Carbine was among the sixty-seven contributors to the 2010 food drive.

¶ 9. The second set of exhibits offered by plaintiffs reveals information pertaining to the "Gift-of-Life Marathon," an annual blood drive organized by CVPS and two radio stations. The blood drive benefitted the American Red Cross, and apparently participating blood donors were given bags that "include special coupons from local businesses as a gift to the donors, and to support the business community." According to the record, in 2008, Juror R was listed as a contact person in a promotion for the blood drive in the Rutland Region Chamber of Commerce Courier. The 2008 promotion also listed Juror R as the point person for businesses including coupons in the gift bags. In 2009, Juror R was photographed by the Rutland Herald stuffing gift bags for blood donors. In 2010, a documentary entitled "The Blood in This Town" featured the blood drive, and the documentary's website included a "Donor Wall of Honor" listing RRMC as giving "a stellar donation of $5000 supporting the making of the film," along with Ryan Smith & Carbine's name and some sixty-four other contributors. Finally, in 2011, RRMC was among the dozens of local businesses and organizations that donated items to include in gift bags given to blood donors, and its logo was listed among the numerous businesses and organizations that supported the blood drive. Aside from these printouts, plaintiffs' motion for a new trial relied on no other evidence or affidavits. Defendants filed a motion in opposition. The superior court denied the motion for a new trial "for the reasons set forth in [d]efendants' counsel's opposition" without further explanation.

¶ 10. Plaintiffs contend that Juror R's failure to disclose in voir dire her above-described business contacts with Ryan Smith & Carbine and RRMC requires a new trial under the standard for juror bias set forth in *In re Nash*, 158 Vt. 458, 614 A.2d 367. Under *In re Nash*, "[t]o warrant a new trial, 'a party must first demonstrate that a juror failed to answer honestly a material

question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause.'" *Id.* at 466, 614 A.2d at 371 (quoting *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556 (1984)). Plaintiffs also invoke the doctrine of implied bias as a basis for a new trial, citing the charitable activities of Juror R's employer CVPS with RRMC and Ryan Smith & Carbine as an inherent reason for Juror R's disqualification from the case.

I.

¶ 11. Before addressing the merits of this appeal, defendants' challenge to the timeliness of plaintiffs' motion must be considered. Their motion for new trial was filed twenty-eight days after the verdict. Defendants characterize the motion as filed under Rule 60, which allows a retrial based on "newly discovered evidence" only when such information was not discoverable through "due diligence . . . in time to move for a new trial under Rule 59(b)" within ten days of entry of judgment. V.R.C.P. 60(b)(2); V.R.C.P. 59(a)-(b). Noting that the time for a Rule 59 motion expired after plaintiffs' December 21-22 internet search, defendants argue that the fruits of this search were available before the running of Rule 59's ten-day limit. Alternatively, defendants claim that if the motion does not fall outside of the Rule 59(b) and 60(b)(2) ten-day deadline, then Rule 60(b)(6) applies, and plaintiffs' motion was not made within "a reasonable time" as required by that rule. Plaintiffs maintain that post-verdict discovery of evidence of juror misconduct is not newly discovered evidence under Rule 60(b)(2), so that neither the ten-day limit of Rule 59(b) nor the due diligence considerations of Rule 60(b)(2) apply. In plaintiffs' view, the motion for a new trial was filed within a reasonable time under Rule 60(b)(6).

■ ¶ 12. While this Court has not previously considered whether juror bias constitutes newly discovered evidence in the context of Rule 60, the question was answered in the negative under Vermont Rule of Criminal Procedure 33. Criminal Rule 33 provides that "[a] motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment . . . ." *State v. Sheppard* outlined the four factors dictating whether evidence of juror bias is newly discovered under Rule 33: "the evidence must (1) be material and

discovered after the trial, (2) be truly new and not undiscovered merely through a lack of diligence, (3) give reasonable assurance that it will lead to a different result upon retrial, and (4) not be merely cumulative or of impeaching effect." 155 Vt. 73, 75, 582 A.2d 116, 118 (1990). The Court in *Sheppard* held that the defendant's allegation of juror bias did not constitute newly discovered evidence, reasoning that such evidence does not meet the four general criteria recited above because "it is not material to the merits of the accused's innocence or guilt, nor can the trial court determine from such evidence whether a different result would likely follow if a new trial were granted." *Id.* at 76, 582 A.2d at 118. The reasoning in *Sheppard* applies by analogy here.

¶ 13. Moreover, notwithstanding that their new trial motion is labeled as "Based Upon Newly Discovered Evidence of Juror Misconduct," plaintiffs assert that the motion is properly evaluated under Rule 60(b)(6)'s "catch-all" interests-of-justice grounds rather than the Rule 60(b)(2) new evidence basis. On the claim specified, then, the ten-day limit of Rule 59 and due diligence requirement of Rule 60(b)(2) for new evidence are inapposite and irrelevant.[2]

■ ■ ¶ 14. Having decided that plaintiffs filed the motion for a new trial under Rule 60(b)(6), the question becomes whether plaintiffs filed the motion within "a reasonable time" as required by that rule. Rule 60(b) "is intended to provide the sole means of obtaining relief from a judgment after the time for a motion under Rule 59 has run." Reporter's Notes, V.R.C.P. 60. The "general catch-all provision" of 60(b)(6), providing relief for "any other reason justifying relief from the operation of the judgment" not addressed by parts 60(b)(1) through (5) is "designed to give the court the flexibility to see that the rule serves the ends of justice." Reporter's Notes, V.R.C.P. 60. "Although the grounds for relief authorized under Rule 60(b)(6) are broad and the rule must be interpreted liberally to prevent hardship or injustice, there are necessarily limits on when relief is available." *Richwagen v. Richwagen*, 153 Vt. 1, 4, 568 A.2d 419, 421 (1989). Accordingly, plaintiffs' motion for a new trial within less than a month after

---

[2] As it is not material to the disposition of this case, the Court need not decide what constitutes "due diligence" in the context of internet research of jurors under Rule 59 and Rule 60(b)(2).

verdict, and absent any claimed prejudice by defendants, was timely under Rule 60(b)(6).[3]

## II.

¶ 15. The first substantive issue for review is whether the trial court erred in declining to hold an evidentiary hearing and denying plaintiffs' motion for a new trial based on the test for juror bias established in *In re Nash*, 158 Vt. 458, 614 A.2d 367. The court's ruling is examined for abuse of discretion. *State v. Mayo*, 2008 VT 2, ¶ 25, 183 Vt. 113, 945 A.2d 846 (reviewing trial court's decision for abuse of discretion when "court declined to hold an evidentiary hearing on these claims [of juror bias], and denied defendant's motion for new trial"). The trial court was well within its discretion to deny plaintiffs' motion here.

¶ 16. It is beyond cavil that juror bias deprives parties of a fair trial. Plaintiffs would be entitled to a new trial upon proof of juror partiality. *Id.* ¶ 23. To prove juror bias, plaintiffs " 'must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.' " *In re Nash*, 158 Vt. at 466, 614 A.2d at 371 (quoting *McDonough*, 464 U.S. at 556).

¶ 17. Plaintiffs claim that Juror R's silence to the trial court's question "do any of you know that you know something about the case or something about the parties or the attorneys" constitutes failure to answer honestly a material question on voir dire under the first prong of *In re Nash*. Honest answers and

---

[3] Defendants assert that this Court "must affirm because the trial court reasonably could find the motion made January 9, 2012, was not within a reasonable time." Presumably, defendants refer to "[t]he test for determining whether the trial court could properly find that a motion for relief had been filed within a reasonable time [which] is whether the trial court exercised sound discretion on this matter given all the factors and circumstances of the particular case." *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 368-69, 543 A.2d 1320, 1323 (1988). The record does not support defendants' contention. The trial court denied plaintiffs' motion "for the reasons set forth in [d]efendants' counsel's opposition." Defendants' opposition challenged plaintiffs' characterization of juror bias as newly discovered under Rule 60(b)(2), but did not analyze whether the motion was timely under Rule 60(b)(6). Absent a ruling from the trial court on the issue of 60(b)(6) timeliness, there is no suggestion the trial court exercised its discretion in deciding the issue.

good faith silence, even if arguably incorrect, generally do not meet this standard. *McDonough*, 464 U.S. at 555. The United States Supreme Court considered the honesty of a juror's silence in *McDonough*, a case involving a defective lawnmower. The "critical question" posed to the jury panel was whether the jurors or members of the jurors' families sustained "injuries . . . that resulted in any disability or prolonged pain and suffering." *Id.* at 550. Post verdict, the plaintiffs moved for a new trial based on a juror's silence to this question after discovering that an exploding tire broke the leg of one juror's son. *Id.* at 551 n.3. In evaluating whether the juror's silence was equivalent to a dishonest answer, the Court noted that the juror "apparently believed that his son's broken leg sustained as a result of an exploding tire was not such an injury." *Id.* at 555. Regarding the responses of other jurors to the critical question and similar queries, the Court observed that "another juror related such a minor incident as the fact that his six-year-old son once caught his finger in a bike chain," and that "[y]et another juror failed to respond to the question posed to [the juror], and only the subsequent questioning of petitioner's counsel brought out that her husband had been injured in a machinery accident." *Id.* Reconciling these wide-ranging responses, the Court explained that "varied responses to respondents' question on *voir dire* testify to the fact that jurors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." *Id.*

¶ 18. As in *McDonough*, the "know that you know something" question was sufficiently ambiguous that the trial court was within its discretion to find that Juror R's silence did not constitute a failure to answer honestly. The trial court's question did not make clear what it meant to "know" RRMC. Inquiring whether one "knows" an entity is an indistinct question, particularly where, as plaintiffs' counsel acknowledged later during voir dire, "It's a small town. It's hard to not know." See *Dennis v. Mitchell*, 354 F.3d 511, 521 (6th Cir. 2003) (upholding determination that juror was not intentionally deceitful during voir dire when she denied ever being victim of violent crime because juror believed that sexual abuse she suffered as child was not violent crime and question was ambiguous); *Sanchez v. State*, 2011 WY 77, ¶¶ 33-36, 253 P.3d 136 (concluding juror's silence in response to whether he "knew" defendant was honest answer, even though

juror knew of defendant and that defendant was incarcerated, but did not feel he "knew" defendant personally).

¶ 19. All members of the Rutland-based jury panel may have had familiarity with RRMC in some capacity. Plaintiffs' counsel recognized as much, and accordingly tailored his later voir dire examination as follows:

> Now, I presume that some of you have had children [at RRMC], some of you may have been born there. Is there anybody of the twenty-four here that has any misgiving, any reluctance, any reason to think that they will not be fair and impartial based solely on the fact that the hospital where they would go in the event of an emergency is a defendant in the case?

¶ 20. Moreover, to the extent Juror R "knew" the firm Ryan Smith & Carbine, the trial court's question regarding knowledge of the *attorneys* was not sufficiently precise to elicit that information, even if such a response would be "relatively easily understood by lawyers and judges" as necessary. *McDonough*, 464 U.S. at 555. The trial court asked the jury: "[D]o any of you know that you know something about the case or something about the parties or the attorneys or that you have some sort of prescheduled, prepaid travel or surgery or something like that during that period?" Plaintiffs view this question as asking: "[D]o any of you 'know' any of the attorneys, their firms, or any of the parties in this case or do you 'know something about' the attorneys, their firms, or the parties?" The trial court did not ask the jurors if they knew "the attorneys and by extension the attorneys' law firms." See *United States v. Kerr*, 778 F.2d 690, 694 (11th Cir. 1985) ("While the parties in this or any other case are of course entitled to an impartial jury and to an honest and straightforward response from potential jurors on voir dire in order to obtain such a jury, we cannot put upon the jury the duty to respond to questions not posed.").

¶ 21. Additionally, the fact that another juror responded to the trial court's question by disclosing that he was "familiar with the names of the attorneys but [did] not personally have knowledge of either of the attorneys, just to acknowledge that," carries little to no weight in ascertaining whether Juror R knew the attorneys, and the record does not support that contention. The varied responses here are no different from those in *McDonough*, and

reflect nothing more than the fact that jurors are "[c]alled . . . from all walks of life," bringing with them their own personalities and experiences. *McDonough*, 464 U.S. at 555. Juror R's silence to the trial court's question does not satisfy the first part of *In re Nash* for a showing of juror bias.

¶ 22. Plaintiffs also claim that Juror R's silence to plaintiffs' counsel's question "is there anybody here who knows any of us or any of the parties so as to prevent you from being fair and impartial in this case" constitutes failure to answer honestly a material question on voir dire under *In re Nash*. "The courts put great — albeit not absolute — faith in the juror's statement at voir dire that he or she will give the [parties] a fair and impartial trial." 2 C. Wright & P. Henning, Federal Practice & Procedure § 382, at 599-601 (4th ed. 2009). The trial court did not abuse its discretion in finding that Juror R answered this question honestly. No evidence in the record — apart from plaintiffs' speculation of self-serving motives on Juror R's part — suggests that Juror R doubted her ability to be fair and impartial. *Mayo*, 2008 VT 2, ¶ 26 ("[Defendant's] affidavits provided at best speculative or merely conclusory claims of the juror's knowledge, and thus did not demonstrate that the juror 'failed to answer honestly a material question on *voir dire*.' " (quoting *McDonough*, 464 U.S. at 556)); cf. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir. 1992) ("The first prong of the *McDonough* test requires a determination of whether the juror's answers were honest, that is, whether he was aware of the fact that his answers were false." (quotation omitted)). Even if we were to accept the veracity, but doubt the accuracy, of Juror R's belief, to invalidate the result of the trial because of Juror R's "mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555.[4] Thus, the trial court did not err in denying plaintiffs' motion for a new trial

---

[4] It is noteworthy that plaintiffs' counsel also had an opportunity to directly confront Juror R regarding her ability to be fair and impartial:

> PLAINTIFFS' COUNSEL: Is there anything that you've heard so far that gives you any reason to think you may not be able to participate in this jury in a fair, impartial way?
> JUROR R: (Inaudible)
> PLAINTIFFS' COUNSEL: Okay.

under *In re Nash* because plaintiffs failed to establish that Juror R dishonestly answered plaintiffs' counsel's question.

### III.

¶ 23. Plaintiffs' remaining arguments invoke the doctrine of implied bias. Plaintiffs allege this Court should presume bias because Juror R deliberately concealed material information, i.e., that a pecuniary relationship existed between Juror R, RRMC, and Ryan Smith & Carbine, and that Juror R had a "powerful trust" relationship with the participants in the trial.[5] These arguments are unavailing.

¶ 24. " 'Traditionally, challenges for cause have been divided into two categories: (1) those based on actual bias, and (2) those grounded in implied bias.' " *State v. Sharrow,* 2008 VT 24, ¶ 7, 183 Vt. 306, 949 A.2d 428 (quoting *United States v. Torres,* 128 F.3d 38, 43 (2d Cir. 1997)). "The law infers bias when, irrespective of the answers given on voir dire, the prospective juror has such a close relationship with a participant in the trial — a witness, a victim, counsel, or a party — that the potential juror is presumed unable to be impartial." *Id.* ¶ 14. The doctrine of implied bias, however, is appropriate only in *"exceptional situations* in which objective circumstances cast concrete doubt on the impartiality of

Plaintiffs' counsel did not follow up on Juror R's response and instead moved on to questioning other jurors. In the event of an ambivalent or negative answer to this question, it was incumbent upon plaintiffs' counsel to further question Juror R. *In re Nash,* 158 Vt. at 467, 614 A.2d at 372 ("The right to challenge a juror is waived by a failure to object before the jury is impaneled if the basis for the objection is known or might, with reasonable diligence, have been discovered during voir dire."). Drawing the obvious inference from this exchange — that Juror R provided an answer acceptable to plaintiffs' counsel — no evidence demonstrates that Juror R dishonestly answered this question.

[5] Plaintiffs also assert that Ryan Smith & Carbine represented CVPS for almost sixty-five years, and contend that this attorney-client relationship extends to Juror R. Based on a "relationship of powerful trust" plaintiffs question "whether that relationship should have been disclosed to the trial court and plaintiffs' counsel before the jury was impaneled." Plaintiffs did not raise the issue of attorney-client relationship in their motion for a new trial. Issues not raised at the trial court are unpreserved and generally not considered on appeal. *Follo v. Florindo,* 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230. Plain error review in civil cases is allowed "only in limited circumstances, i.e., when an appellant raises a claim of deprivation of fundamental rights, or when a liberty interest is at stake in a quasi-criminal or hybrid civil-criminal probation hearing." *Id.* ¶ 16 (citations omitted). This case does not present such circumstances.

a juror." *State v. McCarthy*, 2012 VT 34, ¶ 35, 191 Vt. 498, 48 A.3d 616 (quotation omitted); see *id.* ¶ 38 (ruling no implied bias where prosecutor and juror were acquaintances and exchanged pleasantries during trial); *Sharrow*, 2008 VT 24, ¶ 17 (declining to imply bias where juror was police officer and former teacher of testifying police officers); *State v. Percy*, 156 Vt. 468, 477-81, 595 A.2d 248, 253-55 (1990) (finding potential juror in sexual assault case had no implied bias though juror's granddaughter was sexually assaulted); *Jones v. Shea*, 148 Vt. 307, 309-10, 532 A.2d 571, 573 (1987) (stating implied bias not automatically appropriate for former patient of defendant-doctor).[6]

¶ 25. Plaintiffs first argue that Juror R's "deliberate concealment of material information" raises substantial questions as to her bias and that *United States v. Colombo*, 869 F.2d 149 (2d Cir. 1989), dictates a new trial here. In *Colombo*, the magistrate made several inquiries as to the potential jurors' contacts during voir dire, specifically asking the jury panel: "Do any of you know anyone on the staff of the United States Attorney's Office of the Eastern District of New York?" and "Do any of you work with lawyers or have close friends, relatives who are lawyers?" *Id.* at 150 (brackets omitted). The potential juror told the magistrate she did not have a "yes" answer to either question, but during the course of the trial the juror stated that her brother-in-law was a government lawyer and that she "did not mention this during the *voir dire* because she wanted to sit on the case." *Id.* The court found the potential juror "reflected an impermissible partiality," not because her brother-in-law was an attorney, but because "her willingness to lie about it exhibited an interest strongly suggesting partiality." *Id.* at 151-52.

---

[6] Plaintiffs assert that "[a]ny question of bias must be resolved against the juror," citing *United States v. Mitchell*, 568 F.3d 1147, 1154 (9th Cir. 2009). *Mitchell* is inapposite and plaintiffs' proposition is incorrect. In *Mitchell*, the defendant challenged his conviction and sentence for possession with intent to distribute cocaine and possession of marijuana because one member of his jury had an uncle murdered by a drug dealer. *Id.* at 1148-49. The court declined to reverse his conviction on the basis of actual or implied bias, cautioning that "bias should be presumed only in extreme or extraordinary cases." *Id.* at 1151 (quotations omitted). Absent evidence to the contrary, jurors are presumed impartial. See *Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.").

¶ 26. For the same reasons that plaintiffs failed to demonstrate Juror R dishonestly answered the trial court's general "know that you know something" inquiry and plaintiffs' counsel's imprecise "fair and impartial" question, plaintiffs cannot show implied bias stemming from any deliberately concealed information. The record does not support the necessary inference. Plaintiffs point to no evidence of purposeful concealment or dishonesty by Juror R to support a new trial.

¶ 27. Plaintiffs next point to implied bias based on a pecuniary relationship between Juror R, RRMC, and Ryan Smith & Carbine, citing *Turner v. Roman Catholic Diocese of Burlington, Vt.*, 2009 VT 101, ¶ 65, 186 Vt. 396, 987 A.2d 960. *Turner* involved claims of negligent hiring, training, supervision, and retention of a priest who sexually assaulted a sixteen-year-old boy. *Id.* ¶ 3. Following a verdict, the plaintiff requested a new trial on the theory that it was reversible error not to excuse for cause a juror who was a member of the parish involved in the suit. *Id.* ¶ 5. The Court noted that finding implied bias for a nonprofit member selected as a juror in a suit involving the nonprofit "turns on whether the possible effect of the litigation on the economic viability of the nonprofit corporation is substantial." *Id.* ¶ 64. Determining it was error not to excuse the juror for cause, the Court explained that it did "not know the financial risk of the litigation for the diocese or the parish, but [it did] know that the bishop found that risk to be substantial, and specifically conveyed his assessment of the risk and its possible adverse consequences for diocese property to members of the parishes." *Id.* ¶ 65. Moreover, the Court noted that the juror at issue was very familiar with media coverage of the litigation against the defendant as well as the fact that "Catholic churches, including hers, could be lost." *Id.*

¶ 28. Plaintiffs' analogy of this case to *Turner* is unpersuasive. First, Juror R has no membership, stockholder, or equivalent interest in RRMC or Ryan Smith & Carbine. See *id.* ¶ 63 ("The decisions generally support the conclusion that if a person were a stockholder in a for-profit corporation that was a party in a civil suit . . . the person would be disqualified from sitting as a juror in the case because of an economic interest in the outcome. . . . [D]ecisions involving membership in not-for-profit corporations are more divided because the personal economic interest is generally absent." (citations omitted)). More

importantly, Juror R's role in CVPS' organization and collection of food and blood to benefit third parties does not constitute an exceptional situation meriting the doctrine of implied bias. CVPS solicited items such as peanut butter, jelly, canned tuna, and pasta to donate to local food shelves. It also organized a blood drive for the American Red Cross, and rewarded blood donors with gift bags filled with coupons and the like from local businesses. The trial court was within its discretion to find that this evidence, suggesting no personal stake on the part of Juror R, did not warrant further evidentiary hearings or a new trial.

¶ 29. Finally, plaintiffs allege that Juror R had a "powerful trust" relationship with the participants in the trial, relying on *Jones*, 148 Vt. at 310, 532 A.2d at 573, and *State v. Kelly*, 131 Vt. 358, 306 A.2d 89 (1973). In *Jones*, the Court "recognize[d] [the] powerful trust that a patient may have in his physician's professional judgment and h[e]ld that, where a juror is a current patient of a defendant-doctor in a malpractice suit, it is reversible error to deny a challenge for cause made against that juror." 148 Vt. at 310, 532 A.2d at 573. In *Kelly*, the defendant was accused of assaulting a guard at the Vermont State Prison. During voir dire, a potential juror disclosed that she was the mother of a secretary at the prosecutor's office and the aunt of a guard at the same state prison where the assault occurred. 131 Vt. at 360, 306 A.2d at 90. The Court suggested it was error not to excuse the juror for cause, reasoning that although the juror stated she could judge the case in a fair and impartial way, "human nature being what it is, the trial court could have well presumed that she might be unconsciously influenced by her relationships with those involved in law enforcement agencies." *Id.* at 361, 306 A.2d at 90.

¶ 30. Neither case supports plaintiffs' contention. Juror R acted as a communications representative at an organization that coordinated and publicized the receipt and direction of food and blood to other charitable organizations. This type of position is not commonly associated with a powerful "trust and confidence" between organizer and donor as is traditionally cultivated between physician and patient, and alone cannot imply bias here. See *Jones*, 148 Vt. at 310, 532 A.2d at 573 (quotation omitted). Absent evidence of a more particular personal investment in the charitable enterprises, her position also does not necessarily carry a "potential for substantial emotional involvement, adversely affecting impartiality," *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir.

1977), as would logically arise in the case of an aunt whose guard-nephew worked at a· prison where an assault allegedly took place against another facility employee. *Kelly*, 131 Vt. at 360, 306 A.2d at 90. The trial court here was not presented with an equivalent risk of personal or emotional connection, or both, sufficient to support a claim of exceptional circumstances required to support plaintiffs' invocation of implied juror bias.

*Affirmed.*