NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 1

No. 2017-180

| | |
|---|---|
| Cheryl J. Brown | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| State of Vermont | October Term, 2017 |

Robert A. Mello, J.

Rabbi Stuart Jay Robinson, Grand Isle, for Plaintiff-Appellant.

Thomas J. Donovan, Jr., Attorney General, and Jon T. Alexander, Assistant Attorney General, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **EATON, J.** Cheryl Brown appeals from a jury verdict finding the State responsible for a motor vehicle accident, but also finding Brown had not proven any resulting injuries and thus was not entitled to any damages. Brown alleges several errors in pre-trial and trial rulings, as well as in the failure to grant her a new trial. We affirm.

¶ 2. We view the evidence in the light most favorable to the verdict. J.A. Morrissey, Inc. v. Smejkal, 2010 VT 66, ¶ 9, 188 Vt. 245, 56 A.3d 701. Applying that standard, the evidence at trial was as follows. Shortly after 5:00 p.m. on May 16, 2012, Cheryl Brown and Matthew Denis were involved in a traffic accident on Route 15 near St. Michael's College in Colchester, when Denis's truck bumped into Brown's car from behind. Denis claimed the accident happened

when he inadvertently took his foot off the brake as he turned to roll the rear window down to provide fresh air to his dog, who was riding in the back seat. Denis's truck, which was positioned behind Brown's car, rolled forward five to six feet, striking her rear bumper. The collision took place in stop-and-go traffic. Denis, a sergeant with the Vermont State Police, estimated his speed at impact to be two miles per hour and did not believe there was any damage caused to Brown's vehicle from the collision. Brown claimed the impact caused a scratch on her rear bumper. The truck Denis was driving did not have any markings indicating it was a police vehicle.

¶ 3. After the collision, Denis got out of his truck and suggested they move their vehicles to a nearby parking lot to exchange information. He also asked Brown if she was hurt; she denied any injury at that time. Brown claimed Denis did not identify himself at the time of the collision. Denis returned to his truck and began moving it to the parking lot. Brown's vehicle remained stopped on Route 15, so Denis paused beside it and again suggested they meet in the parking lot. While stopped on Route 15, Brown called 911. During that call, she learned that Denis had also called in to police dispatch to report the accident, that Denis was a police officer, and that he was waiting in the nearby parking lot. Once the Colchester Police responded to the scene, Brown moved her car to the same parking lot that Denis had suggested, and Denis and Brown exchanged the pertinent accident information.

¶ 4. Subsequently, Brown filed suit against the State of Vermont alleging it was responsible for injuries she sustained in the accident due to Denis's negligence. Brown also raised constitutional claims, alleging: (1) due process and equality of treatment violations under the Vermont Constitution's Common Benefits Clause, and (2) an equal protection, and possibly a due process, claim under the United States Constitution. Brown did not name Denis as a defendant in her suit. Brown's constitutional claims were based on her assertion that Denis received favorable treatment because he was not prosecuted for causing the accident or leaving the scene without providing identifying information.

¶ 5. Before trial, the court granted the State's motion for partial summary judgment, dismissing Brown's constitutional claims. The Court dismissed the due process and equal protection claims under the United States Constitution on the basis that Brown had only sued the State, and not Denis personally, and that the State was not a "person" for claims arising under 42 U.S.C. § 1983. The court further ruled that Brown lacked standing to assert any claim based on the State's failure to prosecute Denis. The court also dismissed the Common Benefits Clause claim because Brown lacked any cognizable interest in the prosecution or discipline of Denis. Lastly, the court held that, to the extent a due process claim had been raised, it was undisputed that Brown received the information required to be exchanged in the event of a car collision shortly after the accident, and her ability to file suit against the State as a result of the accident showed her due process rights were not impeded.

¶ 6. Throughout the trial, Brown contested the court's evidentiary rulings, which limited the scope of inquiry by her counsel and evidence she sought to present. Consistent with its pre-trial rulings, the court refused to permit voir dire questioning, discussion in opening statements, or trial testimony concerning matters related to Brown's characterization of the aftermath of the accident as a "hit and run," a "conspiracy" to allow Denis to receive favorable treatment, or falsification of evidence. On appeal, she claims the restrictions on the voir dire, remarks of counsel, and introduction of evidence resulted in a tainted jury, deprived her of due process, and denied her a fair trial.

¶ 7. Beyond rulings on the scope of what she was allowed to present, Brown alleges several additional errors concerning evidentiary rulings during trial. She claims to have first learned of the existence of a dog in Denis's car during opening statements. She claims the disclosure of the dog at trial constituted new evidence because the dog was not disclosed as a witness to the accident or listed in the police report as being in Denis's car. She claims the late disclosure of the dog is prejudice of sufficient magnitude to constitute structural error requiring

3

the court to declare a mistrial, despite Brown's failure to request one and her failure to depose Denis prior to trial. Further, she alleges the court erroneously allowed the admission of photographs of the vehicles taken by Denis after the accident because an improper foundation was laid to admit them, and their admission was the result of preferential treatment given to the State. She also claims the court erroneously allowed Denis to testify about a speed experiment he did after the accident, during which he took his foot off the brake in a parking lot and allowed his truck to move forward, providing the basis for his estimate of a two mile per hour impact speed.

¶ 8.     At trial, Brown claimed she received injuries to her neck, shoulder, and shoulder blade in the accident. In 2007, Brown had been involved in another rear-end collision; at that time, she was treated by a physician for injuries to her back, neck, and shoulder. Her treating physician for the accident at issue—the 2012 accident—opined that the injuries Brown claimed to have suffered were new injuries and not an aggravation of her prior injuries from 2007. The expert admitted that Brown had not told her of any prior history of neck or shoulder pain. Brown also testified that the injuries she received in the 2012 accident were new ones, unconnected to the earlier 2007 injuries. A defense medical expert claimed the 2012 accident was unlikely to have caused Brown any new injury because of its low speed and his expectation that such a collision would not be sufficient to cause any appreciable injury. He also testified to the lack of any objective medical findings indicating a traumatic injury to Brown from the 2012 accident.

¶ 9.     By agreement of the parties, a proposed jury charge concerning aggravation of a pre-existing condition was not given. During deliberations, the jury questioned whether it should be considering reaggravation of a previous injury in determining whether the 2012 accident caused any damages to Brown. Again, with the agreement of the parties, the court told the jurors that Brown was not claiming defendant's negligence aggravated any previous injury; rather, Brown claimed that the 2012 accident caused the injuries to which she testified at trial and that those injuries were new. The jury subsequently found Brown had not proven the 2012 accident caused

4

any injuries. Brown now claims that the trial court erroneously considered that aggravation of a pre-existing condition was an issue in the case and that the jury erroneously disregarded the evidence that Brown had sustained new injuries in the 2012 accident.

¶ 10. Finally, Brown claims the trial court's erroneous evidentiary rulings resulted in prejudice to her, depriving her of a fair trial. She asserts the trial court abused its discretion by denying her motion for a new trial. We address her arguments in turn.

### I. Summary Judgment Ruling

¶ 11. We turn first to Brown's claim of error in granting the State's partial summary judgment motion dismissing her constitutional claims. We review summary judgment rulings de novo, In re All Metals Recycling, Inc., 2014 VT 101, ¶ 6, 197 Vt. 481, 107 A.3d 895, and we review a grant of summary judgment using the same standard of review applied by the trial court. Greene v. Stevens Gas Serv., 2004 VT 67, ¶ 9, 177 Vt. 90, 858 A.2d 238. "Summary judgment is appropriate only where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Samplid Enters., Inc. v. First Vt. Bank, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996); V.R.C.P. 56(a).

¶ 12. On appeal, Brown asserts an equal protection claim under the Fourteenth Amendment to the U.S. Constitution, alleging Denis was afforded a "forbidden double standard" because he was not charged with leaving the scene of an accident, given a citation for following another vehicle too closely, or otherwise disciplined as a result of the accident. Less clear is whether she also asserted a denial of due process claim, which is not expressly stated in her complaint, although the trial court considered such a claim to have been made. In the pursuit of clarity, we will also consider Brown to have raised a due process claim in her complaint.[1]

---

[1] Brown asserted a Confrontation Clause violation, which the trial court denied, finding it inapplicable in a civil context. She has not renewed that argument on appeal.

¶ 13.   Claims for violations of federal constitutional rights are asserted under 42 U.S.C. § 1983, which provides a remedy for individuals who allege they have been deprived of a federal right by those acting under color of state law.  42 U.S.C. § 1983; Williams v. State, 156 Vt. 42, 47, 589 A.2d 840, 844 (1990) ("[The statute, 42 U.S.C. § 1983,] provides a private remedy for those alleging abridgment of federal rights by 'persons' acting 'under color of' state law . . . [and was] intended to provide a federal forum for those seeking vindication of federal rights . . . ."). Claims under 42 U.S.C. § 1983 may be brought in either federal or state court; however, § 1983 may not be used to support claims for deprivation of state constitutional rights.  Bock v. Gold, 2008 VT 81, ¶ 10, 184 Vt. 575, 959 A.2d 990 (mem.).

¶ 14.   Here, Brown's complaint did not expressly reference 42 U.S.C. § 1983, but it is the vehicle for persons claiming to have been deprived of federal constitutional rights, as Brown does. Williams, 156 Vt. at 47, 589 A.2d at 843-44.  Brown alleged that her constitutional due process and equal protection rights were violated when Denis, "acting under color of law," hit her car, failed to provide the necessary identifying information, left the scene, and was not prosecuted for these actions—constituting preferential treatment.  U.S. Const. amends. V, XIV.  As such, Brown's assertions that the State violated her rights under the U. S. Constitution trigger 42 U.S.C. § 1983 analysis.  For various reasons, these claims are unsuccessful.

¶ 15.   Brown's complaint was brought solely against the State and sought monetary, not injunctive, relief.  With respect to claims for monetary damages, 42 U.S.C. § 1983 may not be used to assert a deprivation of a federal rights claim against a state, as a state is not a "person" for purposes of the statute.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 (1989) (concluding that neither a state nor an official acting in their official capacity are "persons" within the meaning of 42 V.S.C. § 1983); Williams, 156 Vt. at 47, 589 A.2d at 844. (referencing Will, 491 U.S. at 64 and concluding that a state is not a person under § 1983 jurisprudence).  The Eleventh Amendment bars such suits against a state unless the state has waived its immunity or Congress has expressly

6

overridden that immunity. <u>Will</u>, 491 U.S. at 66. Here, Brown explicitly leveled her complaint against the State of Vermont, not Denis; she is seeking monetary damages for the injuries suffered due to the accident; and there is no evidence that the State waived its immunity. <u>Welch v. Tex. Dep't of Highways & Pub. Transp.</u>, 483 U.S. 468, 473 (1987) (reiterating that the Court will find a waiver by a state "only where stated by the most express language" or by "such overwhelming implications . . . as [will] leave no room for any other reasonable construction" (quotations omitted)). Because Brown's suit was against the State, and because, under 42 U.S.C. § 1983, a state is not a "person," as is required to maintain the claim, summary judgment for the State was proper on her equal protection and due process claims.

¶ 16. Additionally, Brown raised a distinct claim that the alleged double standard resulted in a deprivation of a common benefit under Article 7 of the Vermont Constitution.[2] The Common Benefits Clause of the Vermont Constitution and the federal Equal Protection Clause differ markedly in language, historical origin, purpose, and development. While the Equal Protection Clause may supplement the protections afforded by the Common Benefits Clause, it does not "supplant [the state constitution] as the first and primary safeguard of the rights and liberties of all Vermonters." <u>Baker v. State</u>, 170 Vt. 194, 202, 744 A.2d 864, 870 (1999). The purpose of the Common Benefits Clause is to ensure that protections conferred by the State are for "the common benefit of the community" and not just a part of the community. <u>Id</u>. at 212.

---

[2] Article 7 reads: "That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single person, family, or set of persons, who are a part only of that community; and that the community hath an indubitable, unalienable, and indefeasible right, to reform or alter government, in such manner as shall be, by that community, judged most conducive to the public weal." Vt. Const. art. 7.

7

¶ 17. We have identified three core elements that must comprise any potential constitutional tort claim based on a violation of Article 7.[3] In re Town Highway No. 20, 2012 VT 17, ¶ 37, 191 Vt. 231, 45 A.3d 54. First, a "plaintiff must show the denial of a common benefit" due to "disparate and arbitrary treatment when compared to others similarly situated." Id. Second, the plaintiff must demonstrate that "the denial directly favors another particular individual or group." Id. Third, because we must defer to any "reasonable and just" basis supporting "a discretionary judgment by a governmental decisionmaker," a plaintiff bears the burden of proving both that the decision was "wholly irrational and arbitrary," and that it was "actuated by personal motives unrelated to the duties of the defendant's official position, such as ill will, vindictiveness, or financial gain." Id. (quotation omitted).

¶ 18. In this case, Brown is unable to establish the first prong of the required showing—denial of a common benefit. There is no deprivation of a common benefit because Brown has no legally cognizable interest in the prosecution of Denis, or any criminal or disciplinary consequences that may ensue. She has not been deprived of any common benefit and therefore cannot show any disparate or arbitrary treatment from others similarly situated. Summary judgment for the State was proper on Brown's Common Benefits claim.

## II. In Limine Rulings

¶ 19. Having granted summary judgment concerning Brown's constitutional claims, Brown's claims regarding the alleged "hit and run," police "conspiracy," and invidious "double standard" were no longer within the purview of the court's proceedings—the only claim remaining for trial was Brown's claim for personal injury. As a result, the trial court granted an in limine motion and refused to allow voir dire of potential jurors, discussion in opening statements, or

---

[3] The three elements necessary to a constitutional tort claim under Article 7 are distinct from the three-step analysis we employ when evaluating whether a statute violates the Common Benefits Clause. See Baker, 170 Vt. at 212-14, 744 A.2d at 877-89 (discussing analysis of the Common Benefits Clause under Article 7).

8

admission of evidence at trial concerning: the "hidden double standard" or other related characterizations of Denis leaving the accident scene as a "hit and run"; the State's failure to prosecute Denis and alleged falsification of evidence; and Brown's claims regarding violations of her constitutional rights. The trial court found that those matters were irrelevant to a negligence personal injury claim. Brown asserts the limitations on her ability to inquire of prospective jurors about these matters resulted in a tainted jury, but she provides no explanation why this is the case. She further claims these limitations regarding opening statements and exclusion of the evidence resulted in an unfair trial.

¶ 20. We find these arguments unavailing. Matters concerning the conduct of trial, and the admission of evidence therein, rest with the discretion of the trial judge, shaped by the rules of evidence. First and foremost, it is the trial court's obligation to ensure a fair trial for both parties, "conducted in an orderly and expeditious manner." Hitchman v. Nagy, 382 N.J. Super. 433, 451, 889 A.2d 1066, 1077 (Super. Ct. App. Div. 2006). In the discharge of that responsibility, trial courts enjoy broad discretion in the admission or exclusion of evidence, and we review those decisions for an abuse of that discretion. Bazzano v. Killington Country Vill., Inc., 2003 VT 46, ¶ 5, 175 Vt. 534, 830 A.2d 24 (mem.) ("The reliability and relevance of the testimony [in negligence claim] was for the trial court's determination . . . . [W]e discern no abuse of discretion . . . ."); see also Southface Condo. Owners Ass'n, v. Southface Condo Ass'n, 169 Vt. 243, 249, 733 A.2d 55, 60 (1999) ("Trial courts have broad discretion in ruling on the relevance and admissibility of evidence, reversible only for abuse of that discretion."); Haynes v. Golub Corp., 166 Vt. 228, 236, 692 A.2d 377, 381 (1997) ("The trial court has broad discretion in determining the relevance of any evidence."). To obtain reversal based upon exclusion of evidence, the evidence must have been "admissible in the then present aspect of the case." Girard v. Vt. Mut. Fire Insur. Co., 103 Vt. 330, 337, 154 A. 666, 669 (1931). Evidence is admissible if it is relevant; "[e]vidence which is not relevant is not admissible." V.R.E. 402. Relevant evidence

9

is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action"—a material fact—"more probable or less probable than it would be without the evidence." Id. 401. Collateral facts may be relevant if they render the existence of material facts more or less probable. Loomis v. Graves, 116 Vt. 438, 439, 77 A.2d 838, 839 (1951). The court has broad discretion in determining whether evidence is relevant. Haynes,166 Vt. at 236, 692 A.2d at 381.

¶ 21.    In Brown's personal injury claim, the issues for jury determination were liability for the accident, causation, and damages. The conduct of Denis after the accident, or decisions by others about whether to prosecute or discipline him for the accident, had no bearing on the issues the jury needed to decide, which were: whether Denis was negligent in causing the accident, whether the accident caused Brown any damages and, if so, the extent of those damages. None of the excluded evidence regarding Denis's post-collision conduct in moving his vehicle, when he identified himself, or decisions regarding his prosecution had any tendency to make the facts of consequence to the jury, Denis's negligence for the accident, causation, or damages more or less probable than they would be without that evidence. The trial court was well within its discretion in excluding testimony on these matters because they were irrelevant to the issues the jury needed to decide.

III. Limitation on Voir Dire and Opening Statements

¶ 22.    Having decided the evidence was to be excluded from trial testimony, it follows that prohibiting its discussion in opening statements and during voir dire was a proper exercise of the court's discretion. Opening statements provide the opportunity for a party to outline what it expects the evidence to establish. Mitchell v. Amadon, 128 Vt. 169, 175, 260 A.2d 213, 216-17 (1969) (finding that opening statement put plaintiff on notice of contributory negligence claim); see also Commonwealth v. Brown, 81 N.E.3d 1173, 1186 (Mass. 2017) ("The purpose of an opening statement is to outline in a general way the nature of the case which the counsel expects

to be able to prove or support by evidence." (quotation omitted)).  It is used to inform the jury in a general way of the nature of the action and the defense so that they may better understand the evidence.  Winter v. Unaitis, 123 Vt. 372, 374, 189 A.2d 547, 549 (1963).[4]  Thus, opening statements should discuss the issues pertinent to the proceedings, based upon anticipated admissible evidence, not matters the jury will not be called upon to consider or decide or involving evidence a party knows will not be admissible.  Oller v. Hicks, 441 P.2d 356, 360-61 (Okla. 1967) (intentional reference in opening statement to inadmissible evidence may be grounds for mistrial where prejudice cannot be cured by jury instruction).

¶ 23.    The purpose of voir dire is to enable the parties to have a jury comprised of fair and impartial persons who can be free from bias.  See e.g., McCormack v. Rutland Hosp., Inc., 2013 VT 59, ¶ 16, 194 Vt. 242, 79 A.3d 864 ("It is beyond cavil that juror bias deprives parties of a fair trial.");  State v. Bruno, 2012 VT 79, ¶¶ 29-30, 192 Vt. 515, 60 A.3d 310 (explaining the court's prerogative to empanel fair and impartial jury in criminal context); State v. Percy, 156 Vt. 468, 480, 595 A.2d 248, 255 (1990) ("The purpose of a voir dire examination is to raise alleged bias from the realm of speculation to the realm of fact."(quotations and alteration omitted)).  Control of the nature and scope of voir dire rests with the sound discretion of the trial judge and decisions regarding the conduct of voir dire will be reversed only when it has been shown the trial judge abused his or her discretion.  McCormack, 2013 VT 59, ¶ 15 (reviewing for abuse of discretion trial court's decisions not to hold evidentiary hearing and denying motion for new trial for failure to show juror bias); Parker v. Hoefer, 118 Vt. 1, 5, 100 A.2d 434, 438 (1953) ("The nature and extent of the inquiries which may be made in the preliminary examination of jurymen is largely within the discretion of the trial court, and the exercise of its discretion will not be revised except

---

[4]  A similar purpose is served by V.R.C.P. 47(f), which allows the court to give preliminary jury instructions "as to the respective claims of the parties and as to such other matters as will aid the jury in comprehending the trial procedure and in understanding the evidence."

in cases of its abuse."); <u>Fowlie v. McDonald, Cutler & Co.</u>, 85 Vt. 438, 444, 82 A. 677, 680 (1912) ("It is undoubtedly true that the course and extent of an examination on the voir dire is largely within the discretion of the trial court."). Because the trial court appropriately excluded the evidence, discussion of it with potential jurors served no purpose in exposing any potential juror bias and the trial court properly refused to allow any inquiry into those areas during voir dire. The prohibition of discussion of these issues with potential jurors did not result in a tainted jury; permitting discussion of information having nothing to do with the case with potential jurors may well have.

## IV. Evidentiary Rulings

¶ 24.    Brown also contests several specific evidentiary rulings regarding: Denis's late disclosure that his dog was in the backseat of his car during the accident; the admission of Denis's photos of the accident scene; evidence of Denis's personal speed experiment; and the exclusion of the transcript from Brown's 911 call. Brown maintains that these rulings resulted in prejudice against her and that, as such, a mistrial is the proper remedy.

¶ 25.    Brown claims the court should have declared a mistrial on its own motion when she first learned of the presence of a dog in Denis's truck during opening statements. She asserts she was unfairly and prejudicially surprised by the disclosure of this information at trial. This claim suffers from a number of shortcomings. First, Brown did not move for a mistrial at the time of learning the information, or at other times during the trial when she claims other improper evidentiary rulings were made, because she wanted to see what other information, if any, had been withheld. We have long recognized a party may not gamble on a favorable verdict before urging prejudicial conduct as grounds for a mistrial, which was what her wait-and-see tactic constituted. See <u>Rash v. Waterhouse</u>, 124 Vt. 476, 477-78, 207 A.2d 130, 131-32 (1965) ("If questions as to the prejudicial effect of unchallenged testimony need not be raised until the close of evidence, litigation could be rendered uncertain, inconclusive and punitively protracted. A party who

12

allowed inadmissible evidence to come in without objection could gain an unconscionable advantage."). Brown purposefully did not move for a mistrial when she learned of the dog's presence; now she alleges she was prejudiced by the late disclosure. However, a trial court may not be put in error by a point not raised below. Harrington v. Decker, 134 Vt. 259, 261, 356 A.2d 511, 512 (1976). Brown's argument that the court should have declared a mistrial without her request that it do so is unavailing. State v. Curtis, 145 Vt. 552, 553-54, 494 A.2d 143, 144-45 (1985).

¶ 26. Further, to be entitled to a mistrial, the party requesting it must show she has been prejudiced. Rash, 124 Vt. at 477-78, 207 A.2d at 132. Brown claims prejudice but does not put forth any basis to support the claim. The dog could not testify and thus is different from an undisclosed witness. Brown asserts the State deliberately withheld the information concerning the presence of the dog in Denis's vehicle, but she does not show any discovery response that was incorrect. Although she might have learned of the dog had she deposed Denis, she did not take his deposition. She further alleges the State's independent medical examiner presented false evidence about how he learned about the dog, but she does not show why the medical examiner's information about the dog was material to his medical examination. There is nothing to support her assertions that evidence about the dog was deliberately withheld, was falsified, or prejudiced her in any way.

¶ 27. Finally, the State attempted to use Denis's action in rolling down the window for his dog as an explanation for why his car went forward, apparently in an effort to establish a lack of negligence on his part. The jury returned a verdict finding the State liable for the accident, thereby rejecting the defense that Denis was not negligent. This further demonstrates the lack of prejudice concerning her late discovery of the dog.

13

¶ 28.   Any of these reasons standing alone would be sufficient to defeat a claim of error for failing to declare a mistrial relating to the disclosure of the dog.  There was no basis for a mistrial.

¶ 29.   Brown asserts the court made two erroneous evidentiary rulings in favor of the State, which she claims denied her a fair trial.  The trial court properly exercised its discretion in both instances.  Bazzano, 2003 Vt. 46, ¶ 5 (explaining that trial courts enjoy broad discretion in admission or exclusion of evidence, and those decisions are reviewed for abuse of that discretion).

¶ 30.   The first ruling concerns the admission of three photographs of the vehicles involved in the collision, which were taken by Denis on his cell phone.  At the time of trial, Denis had copies of the pictures but no longer had possession of the cell phone.  Brown claims the photos should not have been admitted because: they are hearsay; they were not properly authenticated; and, because the absence of the cell phone on which the photos were originally taken resulted in the destruction of the evidence, the photos do not qualify as duplicates.  First, the hearsay objection was not raised below and accordingly it is waived.[5]  In re Hale Mountain Fish & Game Club, Inc., 2014 VT 54, ¶ 18, 197 Vt. 217, 103 A.3d 890.  Second, the photographs were properly authenticated through Denis's testimony that they truly and accurately represented the vehicles.  Nothing further was required to authenticate them; they were admissible.  State v. Colby, 139 Vt. 475, 476, 431 A.2d 462, 464 (1981).  Brown's objection based on the absence of the cell phone upon which the photos were originally taken is essentially a best evidence objection, presumably that the phone represents the best evidence.  The absence of the cell phone does not render the photos inadmissible under Vermont's best evidence rule, V.R.E. 1002, which makes it clear that

---

[5]  Even were the court to consider the hearsay objection, a photograph is not a statement, and thus cannot be hearsay—which is an out of court statement offered for the truth of the matter asserted therein.  See V.R.E. 801(c); United States v. Moskowitz, 581 F.2d 14, 21 (Ct. App. 2d Cir. 1978) ("[A] sketch itself . . . is not a 'statement' and therefore can no more be 'hearsay' than a photograph identified by a witness.").

14

the best evidence rule does not apply to situations where a photograph is used to illustrate the testimony of a witness. Reporter's Notes, V.R.E. 1002. Denis testified he did not observe any damage to the vehicles; the photos merely illustrated of that testimony and did not have independent legal significance.[6] The photographs were properly admitted.

¶ 31. The court also admitted Denis's testimony concerning his speed experiment, conducted sometime after the accident, during which he attempted to replicate the accident to determine his vehicle's estimated speed. To do so, Denis took his foot off the brake of his truck in a parking lot and gauged the truck's moving speed once it had traveled what he estimated to be the distance between the two cars on that day. Opinion testimony by lay witnesses is admissible if rationally based on the witness's perception and helpful to a clear understanding of the testimony or determination of a fact in issue. V.R.E. 701. Denis's opinion was based upon his observations at the time of the accident and at the time he conducted his experiment. His opinion as to impact speed was relevant to the issues of both causation and damages. The court was well within its discretion in admitting this testimony.

¶ 32. Brown also challenges the exclusion of the 911 tape of her call to the police. The trial transcript does not show the tape was ever offered into evidence. Having failed to offer the evidence, this claim is not properly before this court for review and we do not consider it further. State v. Hooper, 151 Vt. 42, 45-46, 557 A.2d 880, 881-82 (1988). In sum, Brown's evidentiary challenges are meritless.[7]

---

[6] Although not specifically articulated, the absence of the cell phone could be claimed to create a gap in the chain of custody. However, this is irrelevant when considering the admission of photographs. State v. Howe, 136 Vt. 53, 66, 386 A.2d 1125, 1132 (1978).

[7] Brown claims the tape was offered but that no discussion by counsel or the court appears in the transcript because it was inaudible. The transcript does reflect some "inaudible" comments by Brown's counsel but contains nothing indicating an offer was made or any ruling given by the court. Assuming all references to the offer and any ruling thereon were "inaudible," it was incumbent upon counsel to seek to correct the record pursuant to V.R.A.P. 10(f). This was not done, and therefore there is no offer of the 911 tape in the completed record.

V. Denial of New Trial Motion

¶ 33.    Finally, Brown maintains the trial court abused its discretion in denying her motion for a new trial.  In her motion, Brown renewed her evidentiary objections discussed above and alleged that the court's jury instructions regarding the injuries sustained she in the accident were incorrect, amounting to an abuse of discretion.  Denials of motions for a new trial are reviewed under an abuse of discretion standard.  In reviewing the denial of a motion for a new trial under Vermont Rule of Civil Procedure 59(a), we have stated that "[t]he law favors upholding jury verdicts," and that the decision to grant or deny a motion for a new trial is committed to "the sound discretion of the trial court."  Shahi v. Madden, 2008 VT 25, ¶ 14, 183 Vt. 320, 949 A.2d 1022. Accordingly, "[w]e will reverse the trial court's decision [on such a motion] only where, viewing the evidence in the light most favorable to the verdict, we conclude that there has been an abuse of discretion."  J.A. Morrissey, Inc., 2010 VT 66, ¶ 9.

¶ 34.    First, Brown's reliance on the evidentiary rulings to which she objected provides no basis for a new trial.  Her argument in support of a new trial, to the extent it relies upon the court's evidentiary rulings, merely reiterates the same objections to the same rulings.  The court's evidentiary rulings were correct.

¶ 35.    Second, we address Brown's concerns regarding the jury instructions.  The court provided counsel with a copy of proposed jury instructions at an early stage in the trial.  The proposed instructions included one on aggravation of a pre-existing injury.  During trial, Brown testified that the accident had not aggravated any prior injury, but that she had sustained a new injury.  Following Brown's testimony, and with the agreement of counsel, the court deleted its aggravation of a pre-existing condition and charged the jury without that instruction.  Following the instructions, there was no objection by counsel to its exclusion.  The case was submitted to the jury using special interrogatories.

¶ 36. During deliberations, the jury sent a question to the judge as follows: "Should we be considering question 2 (cause) if we think this is a reaggravation of a previous injury?" After conferring with counsel, and with their assent, the court responded to the jury's question as follows:

> If you answer question 1 "yes," you must answer question 2.
>
> The plaintiff is not claiming that defendant's negligence aggravated any previous injury.
>
> The plaintiff's claim is that defendant's negligence caused the injuries she testified to and that those injuries were new.
>
> If you find that the plaintiff has proved her claim by a preponderance of the evidence, then you must answer question 2 "yes."
>
> If you find that the plaintiff has not proved her claim, you must answer question 2 "no."

No objection was made to the court's response, and the jury continued deliberating. The jury subsequently answered question 2 "no," and the court entered judgment for the State.

¶ 37. In her new trial motion, Brown claimed there was no evidence of any prior injury and thus there could be no evidence of any aggravation of an old injury. She insisted the only evidence of injury from the accident was evidence of a new injury. In denying the motion, the trial court noted the testimony of the State's medical expert, Dr. Backus, that it was unlikely Brown sustained any new injury in the 2012 accident and that the structural abnormalities seen in a post-accident MRI were likely the result of the natural aging process. He further testified there was no indication the abnormalities impinged or compressed any nerves to cause any pain or numbness. The court found this testimony from Dr. Backus, which did not rely on Brown's pre-accident medical condition, to be sufficient for the jury to find no injury had been caused in the 2012 accident. The court acknowledged the competing testimony from Brown and her medical experts, but found it was the jury's role to resolve conflicting testimony and credibility issues. The court

17

also noted the lack of any objection by Brown to the jury charge as given constituted a waiver of any claim that the jury was charged incorrectly.

¶ 38.    Brown fails to demonstrate that the trial court abused its discretion in denying her new trial motion.  A showing of an abuse of discretion requires establishing the court either totally withheld its discretion or exercised it on clearly untenable or unreasonable grounds.  Turner v. Roman Catholic Diocese, 2009 VT 101, ¶ 10, 186 Vt. 396, 987 A.2d 960.  The trial court's decision denying her motion was thorough, properly considered the evidence in support of the verdict, and explained its reasoning well.  The court did not abuse its discretion in denying the motion for a new trial. Beyond that, the record reveals the trial court was assiduous in carrying out its responsibility to ensure both parties were afforded a fair trial in the first instance.

Affirmed.

FOR THE COURT:

_____

Associate Justice

18